## HOUSE v. EASLEY et al.

(Court of Civil Appeals of Texas. Galveston. April 12, 1912. Rehearing Denied April 25, 1912.)

1. BROKERS (§ 55*)—RIGHT TO COMMISSION—SEVERAL AGENTS.

Where the owner placed his property in the hands of several agents for sale, and agreed to pay the commissions to the first agent making the sale, the owner cannot be required to pay a commission to two agents, though one agent may possibly obtain the benefit of work done by another.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 82–84; Dec. Dig. § 55.*]

2. BROKERS (§ 86*) — ACTIONS FOR COMMISSIONS—SUFFICIENCY OF EVIDENCE.

Evidence in a real estate agent's action for commissions *held* to show that plaintiff was not the procuring cause of the sale, but that the real cause was the prior sale of other lots by another agent.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 116–120; Dec. Dig. § 86.*]

3. APPEAL AND ERROR (§ 989*) — VERDICT—CONCLUSIVENESS.

A successful plaintiff is entitled to have the evidence viewed in the light most favorable to him on appeal, and all conflicts resolved in his favor.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3897; Dec. Dig. § 989.*]

Appeal from Harris County Court; Clark C. Wren, Judge.

Action by Robert B. Easley and another against J. H. B. House. From a judgment for plaintiffs, defendant appeals. Affirmed in part, and reversed and rendered in part.

R. W. Franklin, of Houston, for appellant. R. W. Hall, A. R. & W. P. Hamblen, Baker, Botts, Parker & Garwood, and J. H. Tallichet, all of Houston, for appellees.

REESE, J. In this case Robert B. Easley sued J. H. B. House in the county court for $500, alleged to be due him as broker's commission for the sale of a lot in Houston, the property of House, which it is alleged

was placed in plaintiff's hands by House for sale for an agreed commission of $500. Defendant answered by general denial. He further alleged that he placed the lot in question with several real estate agents for sale at the price of $12,500, telling them that he would pay $500 commission to the agent making the sale, that the lot was finally sold at this price to J. F. Meyer, but that both plaintiff Easley and H. M. Curtin claim to have made the sale. He prays to be allowed to deposit the $500 in the registry of the court, that Curtin be made a party, and that the court determine which one of the claimants is entitled to the money. Curtin was made a party and appeared and answered, alleging, in substance, that he had effected the sale to Meyer, and was entitled to the money, which House had agreed to pay him. After hearing the evidence, the court instructed the jury to return a verdict for Curtin for the money in the registry of the court, and also submitted to them the issue as to whether Easley was entitled to recover. The jury returned a verdict for Easley also for $500. Caught thus between the upper and nether millstone, failing to get any relief by a motion for a new trial, House appeals to this court.

It is clear from the undisputed evidence in this case that Easley and Curtin are not both entitled to the commission. Appellant had placed the property with both of them. Neither had an exclusive agency. Easley testified: "I knew Mr. House had this property in the hands of several. I did not understand I had an exclusive agency. I understood the first man to make the sale would get the commission." Taking Easley's own testimony (as to a material portion of which he is contradicted by both Meyer and House) House put the property in his hands for sale for $12,500, agreeing to give him $500 commission if he effected a sale. He approached Meyer, who gave him some encouragement to think that he might be induced to buy. Afterwards House, fearing that he would be pressed to take up notes upon the lot, reduced the price to $11,500 in order to make an immediate sale, for which price Easley offered it to Meyer, but Meyer did not seem disposed to buy at that price. House, having arranged for an extension of his notes, put the price back to $12,500. Some time about the latter part of May Curtin sold Meyer several lots belonging to another party adjoining House's lot, and, when this sale was made, Curtin suggested to him that he ought to buy House's lot. It seems that one Reynaud also had the lot for sale, between whom and Curtin there was some connection. Curtin offered the lot to Meyer for $12,500. Meyer told him that it had been offered to him by Easley $1,000 cheap-

er, and he had declined to buy. Curtin, however, persuaded Meyer to buy at $12,500, and the sale was effected through Curtin at this price. Although Easley had made diligent efforts to sell to Meyer, calling on him many times for that purpose, it is entirely clear from his own testimony that he did not effect this sale, and was not the procuring cause. Meyer in all probability would not have bought at all but for his purchase of the Bell lots. His refusal to buy through Easley at $11,500 and his purchase in a little more than a month afterwards from Curtin at $12,500 shows this. According to Easley's testimony, the last time he spoke to Meyer about it was about the 7th of April. The sale was effected about the 30th of May. When Easley undertook to spend his time and labor in trying to effect a sale, he knew, to use his own language, that "he did not have an exclusive agency, but that the first man to make the sale would get the commission."

[1] Under such a contract, it is possible that one agent in making sale may get the benefit of the work done by another, but the owner of the property cannot be required for this reason to pay the commission to both of them. Each of several agents takes his chances of this, knowing that "the first man to make the sale would get the commission." But it does not appear that the efforts of Easley had anything to do with the sale to Meyer.

[2] The real procuring cause of the sale was the preceding sale to Meyer of the Bell lots. There is no parallel between this case and that class of cases where the agent first brings the property to the notice of the buyer, and brings the parties together, and the owner makes the sale himself, getting the benefit of the agent's services, for which he afterwards refuses to pay. House admits his liability for the $500, and brings the money into court, asking only that he be not required to pay the commission to both Easley and Curtin.

[3] Of course, Easley, with a verdict of the jury in his favor, is entitled here to have the testimony viewed in the most favorable light to him, and all conflicts resolved in his favor, and that we have done. But even with this we are unable to see that the evidence presents any issue to be determined by the jury as to his right to recover. The court should have instructed a verdict for appellant against Easley. The undisputed evidence authorized the charge to return a verdict for Curtin.

The judgment in favor of Curtin is affirmed, but the judgment in favor of Easley is reversed, and judgment here rendered that he take nothing.

Affirmed in part. Reversed and rendered in part.