## ED. EDWARDS v. A. N. PIKE ET AL.

Decided January 30, 1908.

**1.—Contract—Broker—Sale—Commissions.**

The general rule is that a real estate agent having a contract authorizing him to effect a sale, is entitled to the commissions agreed upon where he procures a buyer who consummates the purchase of the property on terms satisfactory to the owner; and, ordinarily, when it is shown that the agent was instrumental in bringing the buyer and seller together, the fact that the agent was the procuring cause of the sale afterwards consummated is sufficiently established.

**2.—Same—Competing Brokers—Commissions.**

The owner of property has the right to place the same in the hands of two or more agents for sale, and when this is done and the fact is known to the agents, the mere fact that one of the agents was instrumental in bringing the owner and buyer together is not alone sufficient to entitle such agent to the commission upon a consummation of a sale by the owner. When competing agents offer the property to the same buyer on different terms, that agent is entitled to the commissions, although not the one introducing the buyer, whose contract with the buyer the owner ratifies and consummates.

**3.—Same—Liability for Commissions—Test.**

Where different agents have the same property for sale, the test which ought to control in fixing the liability of the owner for commissions upon a sale is: Within the knowledge of the owner at the time, was the sale consummated on terms agreed upon between the buyer and the broker who brought the parties together, or was it consummated on other terms as the result of negotiations between another broker and the buyer and after the buyer had abandoned the contract with the first broker?

**4.—Same—Exclusive Agency.**

An agent who has the exclusive right to sell property, or who is ignorant that another agent has a right equal to his own, and who brings the owner and buyer together, is entitled to his commission when a sale is consummated by the owner himself or by the agency of another broker.

Appeal from the County Court of Red River County. Tried below before Hon. J. M. Deaver.

*George Trice,* for appellant.—Upon the propriety of the charges requested by the appellant and refused by the court, appellant cited: Graves v. Baines, 78 Texas, 94; Bowser v. Field, 17 S. W., 45; Bogart v. McWilliams, 31 S. W., 434; Hahl & Co. v. Wickes, 44 Texas Civ. App., 76; Painter v. Kilgore, 101 S. W., 809; McDonald v. Cabiness, 100 Texas, 615.

*Lennox & Lennox,* for appellee.—When a principal employs more than one broker, who act independently of each other, the one who first completes the sale is entitled to the commission, unless the exertions of another broker are the procuring cause of the sale. Duvall v. Moody, 24 Texas Civ. App., 627; Glascock v. Vanfleet, 46 S. W., 449; Vreland v. Vitterline, 33 N. J. Law, 247; Francis v. Eddy, 52 N. W., 43; Whitcom v. Bacon, 170 Mass., 479; Sosdorf v. Schmidt, 53 N. Y., 321; Ahern v. Baker, 34 Minn., 98; McGuire v. Carlson, 61 Ill. App., 297.

WILLSON, CHIEF JUSTICE.—A. N. Pike owned 143 acres of land in Red River County which he wished to sell. Appellant was a real estate agent doing business in Clarksville. The Tayloe-Butcher Realty Company also was a real estate agent doing business in the same town. Each was authorized by said Pike as such an agent to effect a sale of the land for him. Each knew that the other was so authorized. The Realty Company advertised in the Dallas News that it had lands in Red River County for sale. One Kluttz, who lived in Rockwall County, read the advertisement, began a correspondence with the Realty Company about the lands advertised, and finally went in person to Clarksville to see them or about them. A representative of the Realty Company met him and spent nearly all of a day showing him lands the company had for sale, but did not then show him Pike's land. Kluttz wanted sandy prairie land, and none of those shown him were satisfactory. The parties made an engagement to go and look at other lands on the next day, when the representative of the Realty Company expected to show Kluttz the Pike land.

In the meantime Kluttz met Edwards, and as a result of information Edwards gave him about the Pike land, cancelled his engagement with the Realty Company, and went with Edwards to see it. He was there introduced to Pike, the owner, who was informed that he was a prospective purchaser of the land, and discussed with Pike the matter of renting to him the land for the following year in the event he (Kluttz) became the purchaser thereof. The evidence is conflicting as to the details and result of the negotiations which followed between Edwards and Kluttz. Kluttz testified that Edwards proposed to sell him the entire 143 acres at $25 per acre, which proposition he declined; that he then offered Edwards $25 per acre for one hundred acres of the land; that Edwards refused to sell him the 100 acres for the price offered until he had had an opportunity to consult with the owner thereof; that he replied to this suggestion that he wait until Edwards could see the owner; that he had not time to wait; and that there the negotiations between them ceased. Edwards testified that he offered the entire tract of 143 acres to Kluttz at $20 per acre; that Kluttz declined this offer, and proposed to give $25 per acre for 100 acres off the east end of the tract; that he, Edwards, replied to this proposition that if he would agree to have the 100 acres so cut off the east end as to leave Pike one of the houses, he would accept the proposition; that Kluttz so agreed; that he, Edwards, then proposed that they reduce their agreement to writing and put up a forfeit to enforce it; that Kluttz declined to do this, stating that he would first have to return to Rockwall County and see what disposition he could make of some property he had there; and that they parted with the understanding that Kluttz would be back on Tuesday of the following week, when the trade would be closed. Edwards reported to J. A. Pike, the father of A. N. Pike, and fully authorized to act for him in all matters connected with the sale of the land, that he had found a purchaser for the land who in a few days would close the trade.

In the meantime the Realty Company advised J. A. Pike that it had found a party willing to give $25 per acre for 100 acres off the east end of the tract. The Realty Company was then informed that Edwards had a man willing to buy on similar terms, and its representative was asked by J. A. Pike if the company's and Edwards' purchaser were one and the same person. The reply was, "No, I reckon not." On Wednesday of the following week, according to the testimony of J. A. Pike, Butcher, representing the Realty Company, came to him with a letter from a party proposing to buy the land. J. A. Pike thereupon went to Edwards and stated to him that the Realty Company had a man who might buy the land, when he was told by Edwards not to wait on his man, but to go ahead and trade through the Realty Company, as his man, who was to have returned the day before, might not come back. He (Pike) then told the Realty Company that Edwards' man had not come back, and to go ahead and close up the trade with the buyer it had found. By the terms of the sale made by the Realty Company the 100 acres was to be so surveyed as to include both houses. After the trade verbally had been closed with Kluttz through the Realty Company, but before the contract of sale had been reduced to writing and a forfeit put up, A. N. Pike, the owner of the land, was informed by Edwards that Kluttz was the man he had sold the land to, that he claimed he was entitled to the commission of five percent agreed upon, and expected, if he (Pike) closed the deal through the Realty Company and paid the commission to it, to sue him. A. N. Pike, notwithstanding, closed the trade through the Realty Company and permitted them to retain out of the purchase price five percent, or $125, as the commission for making the sale.

Appellant's suit was commenced in a Justice's Court in Red River County, where he recovered a judgment for $125, interest and costs, against A. N. Pike, who on his cross-action against the Tayloe-Butcher Realty Company, made a party at his instance, recovered a like judgment against said Realty Company. In the County Court, on an appeal prosecuted by the Realty Company, a judgment was rendered July 24, 1907, that appellant take nothing by his suit against A. N. Pike, and that the latter take nothing by his cross-action against the Realty Company. The appeal to this court is prosecuted by Edwards alone.

In his first assignment of error appellant complains of the refusal of the court at his request to charge the jury that he was entitled to recover as against appellee Pike if, having a contract with Pike authorizing him to make a sale of the land, he "was the efficient and procuring cause" of the sale to Kluttz. And in his second assignment of error appellant complains of the refusal of the court at his request to charge the jury that he was entitled to recover if, having such a contract with Pike, he procured a purchaser for the land, ready, able and willing to buy it on terms acceptable to said Pike. The court instructed the jury to find for appellant if they believed he had such a contract with Pike, and had "procured one J. R. Kluttz to buy said land and that said Kluttz was willing and able and ready to purchase said real estate upon terms proposed by

said plaintiff and that said terms were acceptable to the said A. N. Pike;" and further instructed them upon like conditions to find for the Realty Company.

The general rule is that a real estate agent, having a contract authorizing him to effect a sale, is entitled to the commissions agreed upon where he procures a buyer who consummates the purchase of the property on terms satisfactory to the owner. Ordinarily, the application of this rule to the facts of a given case is not difficult; for when it is shown that the agent was instrumental in bringing the buyer and seller together the fact that the agent was the procuring cause of the sale afterwards consummated is sufficiently established. But when each of two or more brokers, within the knowledge of the other, has a contract authorizing him to effect a sale of the same property, the fact that one was instrumental in bringing the parties together fairly can not be made the test of the liability of the owner of the property for commissions claimed. The owner has a right to authorize more than one broker, each independently of the other, to effect a sale of his property; and so long as he remains neutral, he ought to be permitted, without incurring liability for commissions to more than one of them, to consummate the sale of the property through the one who first produces a person ready to buy it, whether the agent producing the purchaser is the one who first brought him and the buyer together or not. The practical test which ought to control in fixing the liability of the property owner on the facts of a case like this is: Within the knowledge of the owner at the time, was the sale consummated on terms agreed upon between the buyer and the broker who brought the parties together; or was it consummated on other terms as the result of negotiations between another broker and the buyer, and after the latter had abandoned the contract made by him with the other broker? In the absence of special circumstances which would make it proper to so charge him, the owner ought not to be held liable for commissions to more than one broker, and after actually selling his property to a purchaser produced by one broker on terms negotiated by such broker and not by another, he ought not before paying him the commissions, to be required, as suggested by the charges refused, at his peril to determine whether some other broker was not in fact the procuring cause of the sale. In such a case the risk of finally effecting by his agency, on terms agreed upon between him and the buyer, a sale of the property, ought to be borne by the broker. His services towards effecting one are performed with a knowledge on his part that another broker has authority similar to that conferred upon him; and if before a sale is completed, the buyer quits him and on other terms consummates it through another agent, it is a contingency he should be held to have contemplated at the time he undertook the service, and about the happening of which he has no right to complain. (Vreeland v. Vetterlein, 33 N. J. L., 247; Scott v. Lloyd, 19 Colo., 401; Farrar v. Brodt, 35 Ill., 617; McGuire v. Carlson, 61 Ill. App., 295.)

The broker who undertakes a sale of property with full knowledge

that another broker has also undertaken to sell it, ought not to expect more of the owner than that he will not interfere in favor of the one or the other. It is then an even contest between them, where the chances of success in contemplation of the competition to be expected should be presumed to have been duly weighed by each; and if, as a result of such competition, without interference or fault on the part of the owner, the sale is actually consummated by his competitor, the broker who brought the prospective purchaser and the owner together but failed to consummate a sale upon the terms agreed upon between him and the buyer, ought not to be permitted to charge against the owner the loss sustained by him, not by the owner's fault, but as a result of acts of his competitor and conduct of the purchaser which he reasonably should have contemplated might ensue when he undertook and performed the service.

Such a case is not at all like the one where the broker, having the exclusive right to sell, or ignorant of the fact that another broker has a right equal to his own, brings the purchaser and the owner together, when the sale is consummated by the owner himself or by the direct agency of another broker. There the broker bringing the parties together should be held to be entitled to his commissions if the sale is consummated by the owner himself, because he is entitled to same by the terms of his contract; and if the sale is consummated by another broker, because his services were performed on the faith of his contract and without reference to risks of failure which a knowledge that he had a competitor would have caused him to weigh and, perhaps, provide against.

There is nothing in the facts of this case as shown by the record which should prevent the application to it of the test we have suggested. Appellant at the time he began the negotiations with Kluttz knew that the Realty Company also had authority to sell the land. The owner occupied a position of strict neutrality between him and the Realty Company. Before he had consummated a sale or a contract binding Kluttz to purchase the land, his competitor began negotiations with him resulting in a consummation of the sale. It is true that the testimony shows that the owner was advised by Edwards that he had sold the land to Kluttz; and it is also true that the testimony shows that before the contract of sale was reduced to writing and executed by the parties, but after it had been verbally closed, and after appellant, ignorant of the fact that Kluttz was the purchaser offered by them, had advised the owner to consummate the sale through the Realty Company, that the owner was informed by appellant that he claimed to have effected the sale and to be entitled to the commissions. But we do not think this testimony calls for the application of a different rule. If the sale as finally consummated had been upon the terms agreed upon between Kluttz and appellant, as testified to by the latter, it might with reason be urged that, having been, as the testimony shows he was, advised by appellant of the fact that he (appellant) had sold the land to Kluttz and of the terms of the sale, the owner should not through another broker consummate the sale on those terms. It

might well be urged that, by whomsoever consummated, the sale, in such a case, was the one actually made by appellant, and that he should not be deprived, and that the duty would rest on the owner to see that he was not deprived, of the reward he had earned.  But the sale as finally consummated was not upon terms agreed upon between appellant and Kluttz, but upon other and different terms agreed upon between Kluttz and the Realty Company.  According to appellant's testimony he sold to Kluttz 100 acres at $25 per acre with the understanding that the 100 acres was to be so surveyed as to leave one of the houses on the remaining 43 acres.  The sale consummated by the Realty Company was of the 100 acres so surveyed as to include both of the houses.  The terms of the sale made by appellant were more favorable to the owner than those upon which the transaction was closed, and they were acceptable to him.  But they had not been so reduced to writing as to bind Kluttz, and at a time when he was not bound by them he began negotiations with the Realty Company, and on other terms closed with it a contract for the land.  There may have been a moral, but there was no legal, reason why Kluttz should not, after agreeing with appellant verbally upon the terms of a contract for the purchase of the land, abandon same, and commence negotiations with the ˙ Realty Company for the purchase of same.  There was no legal reason why the Realty Company should refuse to negotiate with him.  And we think there was no legal reason why, having negotiated with him and such negotiations having resulted in a sale on terms acceptable to the owner and first agreed upon between the Realty Company and Kluttz, the former was not entitled to its commissions.  It follows from what we have said that we think the assignments of error mentioned should be overruled.

No one of the remaining assignments suggests an error which we think should cause a reversal of the judgment.  Therefore it is affirmed.

*Affirmed.*