GRIFFITH v. SHOFNER.     (No. 5585.)

(Court of Civil Appeals of Texas. Austin.
Feb. 2, 1916.)

BROKERS ⊚⟞55(1)—RIGHT TO COMPENSATION
—SUFFICIENCY OF SERVICES — NEGOTIATIONS
THROUGH OTHER AGENT.

Where a broker employed to sell realty,
knowing that he had not the exclusive agency,
had a prospective buyer look at the property,
but on his refusal to purchase took no further
action, on sale to the same purchaser through
the active efforts of another broker, the first
broker is not entitled to commission where he
refrained from further efforts to make the sale
on account of representations by the second
broker and not on account of any interference
or fault of the owner.

[Ed. Note.—For other cases, see Brokers,
Cent. Dig. §§ 82–84; Dec. Dig. ⊚⟞55(1).]

Appeal from Travis County Court; Wm.
Von Rosenberg, Jr., Judge.

Action by R. D. Shofner against F. L.
Griffith. From a judgment for plaintiff, de-
fendant appeals. Reversed and remanded.

Edwin H. Yeiser, of Austin, for appellant.
E. C. Gaines, of Austin, for appellee.

KEY, C. J. R. D. Shofner brought this
suit against F. L. Griffith to recover a sum
of money alleged to be due him as a com-
mission for procuring a purchaser to whom
the defendant Griffith sold certain real es-
tate in the city of Austin. The defendant
answered denying liability, but it is not
necessary to make any further statement as
to the pleadings, further than to say that
the defendant alleged that the plaintiff did
not have the sole agency, and that the sale
of the property was in fact negotiated by
Hal Hailey, another agent with whom the
defendant had listed it; that Hailey, and
not the plaintiff Shofner, was entitled to the
commission; and that the defendant had
settled the same with Hailey. At the trial
the court submitted to the jury and requir-
ed them to find whether Shofner or Hailey
was the procuring cause of the sale of the
property, and in response thereto the jury
made a specific finding that Shofner was the
procuring cause of the sale. Thereupon the
court rendered judgment for Shofner against
the defendant Griffith for $205.25, and the
latter has appealed.

We sustain the first and second assign-
ments, and hold that the court erred: First,
in not giving appellant's requested instruc-
tion directing a verdict for him; and, sec-
ond, in not setting aside the verdict and
judgment and awarding a new trial. The
proof shows that Griffith, the owner of the
property, had listed it for sale or exchange
with both Hailey and Shofner, and perhaps
with other agents, and that Hailey and Shof-
ner were aware of that fact and understood
that neither of them had an exclusive agency.
While there is some conflict in the testi-
mony as to what was done by Shofner in
reference to the sale of the property, the

most favorable view that can be taken of it
in his behalf is that, a short while after the
property was listed with him, he offered it
for sale or trade to one Wright, who became
interested in it; that on the next day he
notified Griffith, the owner, that he had
interested Wright in the property, and that
the latter would come and look at it in a
short time; that on account of Shofner's
efforts Wright kept his promise to Shofner,
went and looked at the property, but de-
clined to purchase or trade for it. Shofner
testified, himself, that he never mentioned
the matter to Wright but the one time, and
that he never mentioned it any more to
Griffith, the owner of the property, until after
he had made the trade and deeded it to
Wright, when he demanded his commission
for making the sale and notified Griffith
that he would hold him responsible for the
same. The undisputed testimony of Griffith,
the owner of the property, Wright, the pur-
chaser, and Hailey, the other agent, shows
that Hailey, who was agent to sell the prop-
erty in question for Griffith and also agent
to sell certain real estate belonging to Wright,
took the matter up with Griffith and Wright
in a day or two after Shofner had reported
to Griffith that he had interested Wright as
a prospective purchaser; that Hailey ex-
erted himself actively for some time, but fail-
ed to bring about any agreement between
Griffith and Wright. Several months there-
after, Hailey took the matter up again, and,
after considerable effort on his part, he suc-
ceeded in getting Griffith and Wright to
agree to a trade, by which Griffith sold to
Wright the property involved in this contro-
versy, and Griffith bought from Wright the
property which he had authorized Hailey to
sell, Griffith taking it as part of the con-
sideration for the property sold by Griffith,
the balance of the consideration being pur-
chase-money notes. As said before, Shof-
ner did nothing toward effecting a sale of
Griffith's property to Wright after he notified
Griffith that he had found Wright as a pro-
spective purchaser and that the latter would
come and look at the property. The only
reason given for not participating any fur-
ther in the matter is Shofner's testimony to
the effect that Hailey called him on the tele-
phone, and asked him why he was "butting
in" to his affairs; that he (Shofner) told
Hailey that Wright was his customer for the
sale of the property, and that he was the
first one to interest him in the matter; and
that thereafter, in a personal interview with
Hailey, the latter told him that he had made
considerable effort to sell Wright's property,
and that Wright would not make any trade
with Griffith for the property here involved,
if the transaction was to be handled by him
(Shofner). Whereupon he (Shofner) told
Hailey that, if Wright did not want him to
handle his property, it was all right, but

that, if Wright bought the property in question from Griffith, he (Shofner) would claim his commission from Griffith.

This case is analogous to, and involves the same principles and rules of law that were announced and applied in, Edwards v. Pike, 49 Tex. Civ. App. 30, 107 S. W. 586, decided by the Court of Civil Appeals for the Sixth District, and we quote as follows from that case:

"The general rule is that a real estate agent having a contract authorizing him to effect a sale is entitled to the commissions agreed upon, where he procures a buyer who consummates the purchase of the property on terms satisfactory to the owner. Ordinarily, the application of this rule to the facts of a given case is not difficult; for, when it is shown that the agent was instrumental in bringing the buyer and seller together, the fact that the agent was the procuring cause of the sale afterwards consummated is sufficiently established. But when each of two or more brokers within the knowledge of the other has a contract authorizing him to effect a sale of the same property, the fact that one was instrumental in bringing the parties together fairly cannot be made the test of the liability of the owner of the property for commissions claimed. The owner has a right to authorize more than one broker, each independently of the other, to effect a sale of his property; and, so long as he remains neutral, he ought to be permitted, without incurring liability for commissions to more than one of them, to consummate the sale of the property through the one who first produces a person ready to buy it, whether the agent producing the purchaser is the one who first brought him and the buyer together or not.

"The practical test which ought to control in fixing the liability of the property owner on the facts of a case like this is: Within the knowledge of the owner at the time, was the sale consummated on terms agreed upon between the buyer and the broker who brought the parties together; or was it consummated on other terms as the result of negotiations between another broker and the buyer, and after the latter had abandoned the contract made by him with the other broker? In the absence of special circumstances which would make it proper to so charge him, the owner ought not to be held liable for commissions to more than one broker, and, after actually selling his property to a purchaser produced by one broker on terms negotiated by such broker and not by another, he ought not before paying him the commissions be required, as suggested by the charges refused, at his peril to determine whether some other broker was not, in fact, the procuring cause of the sale. In such a case, the risk of finally effecting by his agency, on terms agreed upon between him and the buyer, a sale of the property, ought to be borne by the broker. His services towards effecting one are performed with a knowledge on his part that another broker has authority similar to that conferred upon him; and if, before a sale is completed, the buyer quits him and on other terms consummates it through another agent, it is a contingency he should be held to have contemplated at the time he undertook the service, and about the happening of which he has no right to complain. Vreeland v. Vetterlein, 33 N. J. Law, 247; Scott v. Lloyd, 19 Colo. 401, 35 Pac. 733; Farrar v. Brodt, 35 Ill. App. 617; McGuire v. Carlson, 61 Ill. App. 295. The broker who undertakes a sale of property with full knowledge that another broker has also undertaken to sell it ought not to expect more of the owner than that he will not interfere in favor of the one or the other. It is then an even contest between them, where the chances of success in contemplation of the competition to be expected should be presumed to have been duly weighed by each; and if, as a result of such competition, without interference or fault on the part of the owner, the sale is actually consummated by his competitor, the broker who brought the prospective purchaser and the owner together, but failed to consummate a sale upon the terms agreed upon between him and the buyer, ought not to be permitted to charge against the owner the loss sustained by him, not by the owner's fault, but as a result of acts of his competitor and conduct of the purchaser which he reasonably should have contemplated might ensue when he undertook and performed the service. Such a case is not at all like the one where the broker, having the exclusive right to sell, or ignorant of the fact that another broker has a right equal to his own, brings the purchaser and the owner together, when the sale is consummated by the owner himself or by the direct agency of another·broker. There the broker bringing the parties together should be held to be entitled to his commissions if the sale is consummated by the owner himself, because he is entitled to same by the terms of his contract; and if the sale is consummated by another broker, because his services were performed on the faith of his contract and without reference to risks of failure which a knowledge that he had a competitor would have caused him to weigh and, perhaps, provide against."

That case was much stronger than the instant case in favor of the agent who first took the matter up with the party who thereafter purchased, because it was shown that he made a verbal contract with the prospective purchaser which was more favorable to the owner of the land than the contract which was subsequently made by another agent, who he knew was authorized to sell it. But, notwithstanding that fact, the court held that, inasmuch as the purchaser was not bound by his verbal contract with the first agent, he had the right to abandon it and accept the offer thereafter made by the other agent, and that having done so, and bought the land upon the terms submitted by the latter, that agent, and not the one who had formerly negotiated a different though more favorable contract to the owner, was the procuring cause of the sale of the property. In the case at bar, it was not shown that Wright, the purchaser, entered into any agreement with Shofner for the purchase of the property, and the agreement which was finally made and consummated was procured by Hailey.

We fail to perceive wherein what was said by Hailey to Shofner in reference to Wright's not being willing to purchase the property if Shofner negotiated the deal can have any bearing in determining Griffith's liability as owner of the property to pay a commission. Under the law, the agent who was the procuring cause of the sale was entitled to the commission. The undisputed facts show that Hailey was that agent, and although, in order to place himself in that position, and thereby earn the commission from Griffith, he may have said or done something which induced Shofner to make no further efforts to consummate the sale, still that fact can properly have no force in this case. Hailey is not a

party to this suit, and Shofner is not seeking any redress from him, but seeks to hold Griffith, the owner of the property, for the commission which Shofner claims that he might have earned, if he had not been prevented from doing so by certain wrongful acts of Hailey. It is not claimed that Griffith was in any wise responsible for the alleged misconduct of Hailey, and if Shofner has any legal ground of complaint against him it cannot be litigated in this case, unless Hailey is made a party and afforded an opportunity to defend himself.

Hence we hold that as the undisputed evidence shows that Hailey, and not Shofner, was the procuring cause of the sale, therefore appellant is not liable to Shofner for commission for effecting the sale. Upon another trial, unless testimony is produced which materially strengthens the plaintiff's case, the trial court should direct a verdict for the defendant.

For the error indicated, the judgment is reversed, and the cause remanded.

Reversed and remanded.