## MOYE v. PARK. (No. 1020.)

(Court of Civil Appeals of Texas. El Paso.
Nov. 6, 1919.)

1. BROKERS ⬭88(3)—PROCURING CAUSE JURY
QUESTION.

Question of whether real estate broker, suing for commission, was procuring cause of sale, *held* for jury.

2. APPEAL AND ERROR ⬭1062(2)—REVERSIBLE ERROR; FAILURE TO SUBMIT ISSUES.

In broker's action for commission, where evidence raised issue of fact as to whether plaintiff or a third party was procuring cause of sale, refusal to submit such issue to jury on defendant owner's request therefor *held* reversible error under Rev. St. 1911, art. 1985.

3. TRIAL ⬭260(1)—INSTRUCTIONS; REQUESTS COVERED.

Refusal to submit special charge which was sufficiently covered by special issue submitted was not error.

Appeal from County Court at Law, El Paso County; W. P. Brady, Judge.

Suit by Edgar D. Park against Edward Moye. Judgment for plaintiff and defendant appeals. Reversed and remanded.

Goldstein & Miller, of El Paso, for appellant.

Hudspeth, Wallace, Harper & Berkshire, of El Paso, for appellee.

HIGGINS, J. Park sued Moye to recover a commission of 5 per cent. alleged to be due for his services in effecting a sale of the Leon Hotel in the city of El Paso. The case was tried before a jury and submitted upon one special issue. The issue thus submitted was whether there was a contract between Moye and Park at any time between July 11, 1918, and February 15, 1919, that Park could have the privilege of making a sale of the Leon Hotel. This was found in Park's favor, and upon such finding judgment was rendered in favor of Park for $225; that being the amount for which he sued.

## Opinion.

The defendant requested the submission of the issue of whether Park was the procuring and efficient cause of the sale, and the refusal to submit such issue is the basis of one of the errors assigned.

[1] It was a closely contested issue as to whether Park was an authorized agent, but the jury has resolved that question in his favor. A Mrs. Marsh was employed by appellant to run the hotel for him, and, according to the testimony of Moye and Mrs. Marsh, she was his only authorized sale agent. The purchaser was a Mrs. McDaniels, who came to El Paso from Roswell, N. M.,

for the purpose of purchasing a hotel. She called upon appellee, who was engaged in the real estate business in El Paso. A Mr. Trowl was employed by Park and all of Mrs. McDaniels' negotiations through the Park's agency were with Mr. Trowl, who represented Park. According to the testimony of Mr. Trowl, he, as the representative of Mr. Park, produced the purchaser, first brought the parties together, showed the hotel and its furnishings to the purchaser, and was thus the procuring and efficient cause of the sale, and thereby earned the commission for his principal, though the deal was finally consummated through Mrs. Marsh.

But as we view the evidence an issue was raised with respect to who was the procuring and efficient cause of the sale, and the refusal to submit such issue necessitates a reversal. Without reviewing all of Mr. Trowl's testimony, it is sufficient to say that he testified that, when Mrs. McDaniels came to their office to buy a hotel, he first showed her the Grand Hotel, then the Fisher, and then went to the Leon, which was a short distance from the Fisher; that upon arriving at the Leon he conducted the purchaser, with the consent and permission of Mrs. Marsh, over the house and showed the same; that the next day he again took the purchaser there, and they looked all over it, and also looked at some other hotels. Thereafter, the purchase of the hotel was consummated through Mrs. Marsh. The purchase price was $4,800, and under Moye's agreement with Mrs. Marsh the latter was to receive, as her commission, all that was obtained over $4,500. The difference of $300 was in fact paid by Moye to Mrs. Marsh.

Mrs. McDaniels testified:

"When I came here, I went to see some of these men, and they showed me some places, and they did not suit me, so I went to Park Bros. to see what they had. Mr. Trowl was in the office. This was about the 5th of February. I had a conversation with Mr. Trowl. At the time I had the conversation with him, he took me to see the Grand Hotel and the Fisher, and the Cody, I believe, is the name of the other. I looked at the Hotel Leon at that time.

"Q. How did you come to look at the Leon Hotel? A. Well, when I came out of the Fisher, I said, 'Where is the Leon Hotel?' He said: 'It is just down the street. I will take you to look at it.' The reason I asked about it, a friend of ours told us that, if we were going to El Paso, to go and look at the Hotel Leon. That friend was Mr. Cummings. He roomed at my sister's. I cannot give his first name, because I do not know it. And he said, 'I will take you down to it,' and I said I would like to see it, and he took us to the hotel, and when he entered the office and talked to Mrs. Marsh, of course I don't know what he said. He came back later with Mrs. Marsh. Mrs. Marsh was

unconcerned about showing the place to me, but I never thought anything about it at the time. But Mrs. Marsh said to me in a whisper that she was the agent for Mr. Moye, and that Mr. Moye would not sell the hotel through Trowl. 'It is not in his hands. If you want to buy it, you will have to buy it from me and Mr. Moye.' So I did not know what to do, so I said I would just go back to my room. So the next morning Mrs. Marsh phoned me and told me that if I wanted to do any business with her or with Mr. Moye I would have to trade with her. So I went to the hotel and made my trade with Mrs. Marsh. The first trip I went there Mr. Trowl did not show all over the hotel. Mrs. Marsh showed me a few rooms. She did not seem to care much and was unconcerned about it, and he never showed me the rooms. He didn't tell me the price, nor anything. Mrs. Marsh did tell me that she was the agent, that I would have to trade with her or with Mr. Moye, and that Mr. Moye would not sell through Park Bros. Mr. Trowl did not go back there with me the next morning. Mrs. Marsh phoned me and said, 'Come by yourself, because you can't trade with Mr. Trowl.' So I went. Mr. Trowl did not go back the next morning. Only the first time that I went there, and at that time I asked him about it because I had heard about it. He did not mention it to me. I mentioned it to him, because I had heard of it. He never mentioned any name at all until I had. At the time we got through looking at the other places and before we left the Fisher, I mentioned the Leon. I mentioned it first myself, right there by the Fisher Hotel, near the door. This friend had told me about it, this friend Mr. Cummings. He told me he had heard it was for sale, but he did not say positively that it was for sale. He told me to look at it. He had roomed there two years ago. I had that in mind when I finally went down there. * * *

"I did come to Park Bros. to see about a property, and they proceeded to show me three or four hotels. I did not know which hotels we were going to before we started. He just showed me three or four hotels. Some rooming houses were mentioned before I left. He spoke of one and said that two weeks before it was for sale, but he didn't know anything about it now; but just by looking at it it appeared to be a good place. I didn't ask Mr. Trowl to take me there. I said, 'Whereabouts is the Hotel Leon?' He said: 'It is down the street. Would you like to see it?' And I said, 'Yes.' He took me down there. My sister and Mr. McDaniels went there with us. My sister went there with me the next morning. Mr. Trowl called up, and Mr. McDaniels went to the phone, and he called the automobile and took Mr. Trowl down there, and Mr. Thompson was with them. Mr. McDaniels went by the office next morning and brought Mr. Trowl down there. Mrs. Marsh talked to me just before Mr. Trowl. They both ran just a few minutes apart. Mrs. Marsh didn't say that they would not trade through Park Bros., but to come and see her. She said, 'Mr. Moye hasn't given it in their hands, and you can't deal with them, because it is in my hands or Mr. Moye's hands.' I don't know that her exact words were, 'You come down here and see us, by ourselves.' I don't remember if that was the effect of the conversation.

"Q. But you did go down by yourself, and did not make the deal through Park Bros.? A. I told Mr. Trowl in the office: 'I am dropping trading with you. I am going to trade with Mrs. Marsh, because she is the agent. * * *' The morning before I went to the Hotel Leon the second time, I told Mr. Trowl, I don't know the exact words that I told him. I told him, though, that I was not going to deal any more about that place with him or with Park Bros. But that was the reason I didn't want to deal any more with him. I had not made up my mind to buy this property, and I told Mr. Trowl that I would not deal with him for the place; that I would have to deal with Mrs. Marsh about it. I went and looked at the Cody and the Savoy after that. It was after the second day that I made up my mind about it. I never made up my mind until day before I left."

Mrs. Marsh testified:

"I remember when Mr. Trowl came there with Mrs. McDaniels. I told him it was my sale, and he wanted the people to look at the house, and I showed it. I told him at that time it was my sale. I told him at that time it was my place to sell. What I meant by telling him it was my sale, was that he wanted to get in on the sale of it. He had some other places that he wanted to sell, too. He said he had showed them some other places, and that they wanted to see this one. He said: 'Of course, if you would sell the house, they would never do any good here. You can do good here, but they cannot.' I told him it was my place to sell and I had promised to sell it, and, if I sold it, it was my sale. He didn't ask me for permission to sell it at that time. He just talked like he was going to sell it. I told him it was my sale, and let him think what he wanted to. He didn't ask me to split commission with him. He didn't say anything about it at all. * * * A friend of mine had told these people about this house. His name was Cummings. He had been stopping at the hotel."

[2] According to the testimony of Mrs. McDaniels, she went to inspect the Leon Hotel upon her own initiative; that in so doing she acted upon the suggestion of a Mr. Cummings, who had formerly resided at the hotel. It is true, Trowl conducted her to the hotel; but, if the purchaser's testimony is to be believed, he acted merely as her guide to it. Of course, if Trowl procured the purchaser and his efforts were the efficient cause of the sale, his principal, Park, would be entitled to the commission, and this would be true notwithstanding the fact that the concluding negotiations were conducted by Mrs. Marsh and the sale finally consummated by her. Graves v. Bains & Woodward, 78 Tex. 92, 14 S. W. 256. But the quoted testimony raised an issue of fact as to who was the procuring and efficient cause of the sale. This being true, the refusal to submit such issue to the jury is re-

versible error. Article 1985, R. S. As to the liability of the seller for the commission where he has two sales agents, see the rule announced in Edwards v. Pike, 49 Tex. Civ. App. 30, 107 S. W. 586; Griffith v. Shofner, 184 S. W. 341; Shaw v. Faires, 165 S. W. 502; and Bellis v. Hann, 157 S. W. 427.

Another assignment complains of the refusal of a peremptory instruction in favor of the defendant. The first two propositions under this assignment question the sufficiency of the evidence to support a verdict for plaintiff. The evidence in behalf of appellee raises issues which must be submitted to the jury. In view of the necessity for a retrial, we refrain from discussing its probative force. The third proposition under this assignment, as well as other assignments, present questions arising upon variance of the evidence from appellee's pleadings. There is no occasion to consider these questions, as appellee has the right to amend his petition to meet the varying phases of the evidence.

[3] The fifth assignment complains of the refusal to submit a special charge. The special issue submitted by the court sufficiently covered the subject-matter of the requested charge, and its refusal presents no error.

Reversed and remanded.