### HEATH et al. v. ELLISTON et al.
### No. 5188.

Court of Civil Appeals of Texas. Amarillo.
Oct. 28, 1940.

Rehearing Denied Dec. 2, 1940.

W. H. Brian and E. O. Northcutt, both of Amarillo, and J. D. Barker, of Canyon, for appellants.

H. H. Cooper, of Amarillo, for appellees R. S. Pipkin and W. L. Branson.

Adkins, Pipkin, Madden & Keffer, of Amarillo, for California Western States Life Ins. Co.

FOLLEY, Justice.

This cause is now before us upon the merits. An ancillary proceeding in the nature of a petition for mandamus was heretofore disposed of by us in an opinion which may be found in 135 S.W.2d 512.

By our opinion on the merits of the date of September 16, 1940, we reversed the judgment and remanded the cause herein to the trial court. The appellees have filed a motion for rehearing and upon more mature deliberation of the issues involved we are now of the opinion we erred in our former holding.

The California Western States Life Insurance Company of the State of California filed a bill of interpleader in the 108th District Court of Potter County, Texas, alleging that it had sold four sections of land in Randall County, Texas, to R. L. Pond for $30,000 and that it owed $1,500 to the agents who were the procuring cause of the sale. The company further alleged that R. S. Pipkin and J. B. Elliston were the agents it recognized as being the procuring cause of the sale; that G. B. Heath and W. H. Harden were claiming the commission; that W. L. Branson was asserting some claim to the commission as the assignee of J. B. Elliston; prayed that all of these parties be made defendants in the suit; that it be allowed its reasonable attorneys' fees out of the $1,500 commission; and that the balance of the commission be paid to such person or persons as might be determined by the court entitled thereto.

The defendants Pipkin, Elliston and Branson, who are the appellees in this court, filed their original answer alleging that the plaintiff insurance company had listed the land in question with Elliston and Pipkin, real estate agents; that such company listed its lands with numerous agents with the understanding that the commission would be paid only in the event that an actual sale thereof was consummated at prices and terms acceptable to the company; that Pipkin and Elliston had effected a sale of the four sections of land to R. L. Pond; that they were the procuring cause of such sale and had therefore earned the commission; and that after the consummation of the sale Elliston, for valuable consideration, had assigned to Branson his undivided one-half interest in the commission.

Heath and Harden, who are the appellants in this court, filed their plea of privilege to be sued in Randall County, the place of their residence, which plea was sustained and the cause duly transferred. They thereupon filed their answer and cross-action alleging that the insurance company had listed the land for sale with them as early as September, 1937; that such company had obligated itself to pay them a 5 percent commission provided such agents were the procuring cause of the sale of the land; and that they were the procuring cause of the sale to R. L. Pond and were therefore entitled to the commission.

The cause was submitted to the jury upon a single issue as follows: "Who do you find and believe from a preponderance of the evidence was the procuring cause of the sale of the four sections of land in

question to Mr. R. L. Pond?" In response to this special issue the jury answered: "Harden & Heath and Pipkin &·Elliston." After discharging the insurance company with its costs and $200 as attorneys' fees, the court upon proper motion therefor rendered judgment non obstante veredicto for the balance of the commission in favor of R. S. Pipkin and W. L. Branson, the latter having purchased the interest of Elliston in the commission. It is from this judgment that the appellants, Heath and Harden, have prosecuted this appeal.

 The controlling issue in this case is whether or not the trial court was authorized under the facts introduced to disregard that portion of the verdict which found that the appellants were the procuring cause of the sale of the land. Under article 2211 of Vernon's Annotated Civil Statutes of Texas there are only two instances where the trial court may disregard the verdict of the jury and render judgment notwithstanding such verdict, namely: (1) where a directed verdict would have been proper and (2) where .the particular finding of the jury has no support in the evidence. It follows, therefore, that if there is any competent evidence to support the finding that the appellants were the procuring cause of the sale, the court erred in rendering judgment contrary to that portion of the verdict which was in appellants' favor. The issue is thus reduced to the question as to whether or not the court under the evidence was warranted in concluding as a matter of law that the appellants Heath and Harden were not the procuring cause of the sale.

The testimony reveals that B. O. Taylor of Amarillo, Texas, investment manager for the insurance cómpany, listed the company's lands generally with real estate agents over the Panhandle of Texas and that it was customary for such company to pay a 5 percent commission to the agent who was the procuring cause of the sale of the land. No agent was given an exclusive listing of the land.· A descriptive price list was introduced in evidence which was shown to have been typical of the lists mailed or given out upon request to various agents. In this instrument three of the sections of land involved were priced at $15 per acre and the fourth at $12.50 per acre. The instrument stipulated that the company reserved the right to reject any offer and that all lands were subject to prior sale and withdrawal from the market .without notice. It was under such an instrument that the four sections were listed with Heath and Harden and with Pipkin and Elliston. Although such instrument did not so recite, the testimony of Taylor was uncontroverted that the company also reserved the right to change the price of the land without notice.

The purchaser, R. L. Pond,, who resided in Hutchinson County, Texas, owned a section of land in Randall County which was adjacent to one of the four sections belonging to the insurance company. Pond's section was worked by his sons whom Pond visited from time to time in 1937 and up to the time he purchased the four sections from the insurance company in 1939. In 1937 while Pond was on his own section of land in Randall County one of the neighbors informed him that the four adjacent sections of land belonging to the insurance company were being offered for sale. Pond passed around ·the outside of such land several times in going from his place to Umbarger and Hereford, Texas, and thereby familiarized himself with the land before having been approached by any real estate agent concerning the same. .

In September, 1937, the appellant Heath, attempting to interest Pond in the insurance company land, drove over three sections of it in company with Pond and also drove up to the fence of the fourth section. At this time Heath priced the south section of the tract to Pond at $12.50 per acre. The testimony was controverted as to the prices at which the other three sections were offered. Heath claimed that he priced them at $15.50 per acre. Pond claimed that two of these sections were priced at $16.50 and the other at $15. At any rate, Pond testified that he was not interested in the land at the prices quoted.

Thereafter, over a period of more than a year the appellants frequently talked with Pond about selling him the four sections of land. In May, 1938, the appellant Heath, according to his own testimony, again took Pond over a portion of the land and showed it to him for the second time. Some time in 1938 Pond told Heath that he had heard that Section 45, one of the insurance company sections immediately adjacent to Pond's section, could be bought for $12.50 per acre and that he would be interested in such section at that price. Some four months later Heath informed

Pond that Mr. Taylor, the Amarillo agent for the insurance company, had said that the insurance company would not segregate Section 45 from the others at a price of $12.50 per acre. At no time during the negotiations between the appellants and Pond did he accept any propositions made by them with reference to the four sections of land. Pond made no counter propositions to them nor did he authorize them to submit any offer to the insurance company nor was any offer of any sort submitted.

About three weeks before the signing of the purchase contract herein, Pipkin and Elliston, having heard that Pond was interested in buying some Randall County land, went to his home in Hutchinson County to see him for the first time. They spent four or five hours with him discussing the four sections of land. They priced all of the land to him at $12.50 per acre. Pipkin testified that they discussed a price of $12.50 per acre with Pond but at such time they had no such price on the land. Before going to Hutchinson County, however, they had discussed with Taylor a price of $12.50 per acre for the whole body of land. Taylor told them he would submit such a price to his company at its home office in California but he did not know whether or not his company would accept it. Pond refused the land at $12.50 per acre and Pipkin and Elliston left Pond's home after the conclusion of the first visit without an offer of any sort. About a week later they returned to see Pond and after some negotiations the latter made a cash offer of $30,000 for the four sections, which was slightly more than $11 per acre. Such offer was immediately submitted by Pipkin and Elliston to Taylor who requested that such offer be made in writing and he would submit it to his company. This was done and the insurance company accepted the offer. Within a few days Pipkin and Elliston returned to Hutchinson County, informed Pond his offer had been accepted and set a date for him to meet them in Amarillo to draw up the contract. On April 20, 1939, Pipkin and Elliston showed the land to Pond. The next day Pipkin, Elliston and Pond met in the office of an attorney for the insurance company at Amarillo where the contract was drawn up by the attorney and executed by Pond. Thereafter it was also executed by Taylor acting for the insurance company, he not being present on

April 21 when the contract was executed by Pond. On May 5th, following, the appellants, having learned of the contract of sale, wrote B. O. Taylor at Amarillo informing him that they had shown Pond three sections of the land; that they had written him about the land and talked to him a number of times; that Pond was their client and they were claiming the commission on three of the sections if the land was sold to him; and that they had also talked to him about the fourth section but did not show the same to him and were not contending for the commission on such section. A letter of similar nature was also written on the same date by the appellants addressed to the insurance company at its home office in Sacramento, California. The testimony is conclusive that this was the first information that the insurance company or its Amarillo agent had received that the appellants had had any connection with the sale of the land.

There is no intimation from the facts of this case that the insurance company or its Amarillo agent failed to maintain an attitude of strict neutrality as between the respective real estate agents involved in this transaction. Nor is there any intimation that through any action or conduct upon the part of the insurance company or its local agent the appellants were deprived of an equal chance with the other brokers in concluding the sale. In fact, the record warrants the conclusion that if the appellants themselves had obtained the $30,000 cash offer from Pond and had submitted the same to the insurance company such offer would have been accepted as readily as the one coming through the other agents. Such being true it is our opinion this case comes clearly within the rule expressed in Edwards v. Pike, 49 Tex.Civ.App. 30, 107 S.W. 586, writ of error refused. In that case the owner of land employed two brokers to sell the same. One of them secured a prospective purchaser upon terms agreed to by the owner, but, before any agreement was reduced to writing the other broker consummated the sale under terms which, though more favorable to the purchaser, were satisfactory to the owner. It was held in that case that the owner was liable for commissions only to the broker who actually consummated the sale. From such case (page 588 of 107 S.W.) we quote: "The broker who under-

takes a sale of property with full knowledge that another broker has also undertaken to sell it ought not to expect more of the owner than that he will not interfere in favor of the one or the other. It is then an even contest between them, where the chances of success in contemplation of the competition to be expected should be presumed to have been duly weighed by each; and, if as a result of such competition, without interference or fault on the part of the owner, the sale is actually consummated by his competitor, the broker who brought the prospective purchaser and the owner together, but failed to consummate a sale upon the terms agreed upon between him and the buyer, ought not to be permitted to charge against the owner the loss sustained by him, not by the owner's fault, but as a result of acts of his competitor and conduct of the purchaser which he reasonably should have contemplated might ensue when he undertook and performed the service."

The effect of the rule of the Edwards v. Pike case, as summed up by Judge German in Keener v. Cleveland et al., Tex.Com.App., 250 S.W. 151, 153, is that "where land is listed with more than one agent, one of whom begins negotiations with a prospective buyer, but concludes no binding agreement, and later another agent begins negotiations with the same buyer, who abandons the prior negotiations, and a sale results by reason of the efforts of the last agent, if the seller maintains an attitude of neutrality, there can be but one recovery, and the agent who actually concludes the sale is the one entitled to the compensation".

■ We think the above rule is decisive of the case before us. Under the present record it impels the conclusion that the appellees, Pipkin and Elliston, were the procuring cause of the sale and we are of the opinion the trial court was warranted in so finding as a matter of law, thus disregarding that portion of the jury's verdict finding that Heath and Harden were also the procuring cause of the sale and granting the motion of the appellees for judgment non obstante veredicto. In so holding we are not without precedent. Walker v. Van Valkenberg, Tex.Civ.App., 291 S.W. 936; Matcek v. Oppenheimer et al., Tex.Com.App., 298 S.W. 394; Griffith v. Shofner, Tex.Civ.App., 184 S.W. 340; Higdon v. Channell, Tex.Civ.App., 109 S.W.2d 254; Bustin et al. v. Murray et al., Tex.Civ.App., 229 S.W. 680; House v. Easley et al., Tex.Civ.App., 147 S.W. 303; Duval v. Moody, 24 Tex.Civ.App. 627, 60 S.W. 269.

The above case of Walker v. Van Valkenberg is analogous to the instant case. In that case it was held that the owner had the right to consummate the sale of real estate with the agent who had finally brought the negotiations to a close and was not liable for commissions to another agent who had negotiated with the purchaser and who may have been instrumental in getting the purchaser in a mental attitude of buying the property at the owner's price. The trial of the case was before the court and judgment was rendered for the broker who made the first negotiations with the purchaser. The Court of Civil Appeals reversed and rendered the judgment in favor of the second broker who finally brought the negotiations to a close, thus holding, in effect, that the latter broker was entitled to the commission as a matter of law. The decision of the appellate court in that case was based upon the rule expressed in the note on page 978 of Am.Ann.Cas.1916B, as follows: "Where property is placed for sale with two or more real estate brokers, the owner, provided he remains neutral towards the several brokers, is liable for commissions only to the one who first completes a sale, or, if the owner has not delegated authority to conclude the transaction, to the one who first produces a customer, able, ready, and willing, to purchase the property on terms agreeable to the owner."

The above rule was reaffirmed by the Texas Commission of Appeals in Matcek v. Oppenheimer et al., supra, although the rule was not applied in such case because of the peculiar facts existing therein. In such case recovery against the owner was allowed the broker Matcek who first began the negotiations because of the fact that the owner had not remained neutral as between the brokers, but on the contrary had requested Matcek to withdraw from the negotiations promising him the commission if the land was sold to the prospective purchaser introduced to the owner by Matcek. Matcek withdrew from the negotiations as requested by the owner. The Commission of Appeals held that by reason of the owner's conduct Matcek did not have an equal chance with the second broker who concluded the sale; that Mat-

cek had done exactly what the owner had asked him to do and thereby had earned his commission. In such holding, however, the Commission of Appeals was careful to draw the distinction in that case from the rule expressed in Walker v. Van Valkenberg, supra, and expressly approved the rule announced in the latter case.

Griffith v. Shofner, supra, is another case almost clearly in point with the facts of the instant case. In that case Shofner was employed as a broker to sell realty knowing that he did not have the exclusive agency for the sale of the property. He found a prospective buyer by the name of Wright whom he induced to look at the property and, unlike the facts of the instant case, notified the owner that he had interested Wright in the property. Wright refused to purchase the property and Shofner took no other action in the matter. In a day or two after Shofner had notified the owner of his prospective purchaser in the person of Wright, Hailey, another agent, exerted himself actively for some time in an effort to sell the same property to Wright. Nothing came of such efforts at the time. Several months thereafter Hailey again took up the matter with Wright and thereupon succeeded in effecting a sale. Thereafter Shofner brought suit against the owner for the commission. In the trial thereof the jury found that Shofner, and not Hailey, was the procuring cause of the sale of the property. The trial court rendered judgment for Shofner. The Court of Civil Appeals reversed the judgment and remanded the cause with instructions that upon "another trial, unless testimony is produced which materially strengthens the plaintiff's case, the trial court should direct a verdict for the defendant". [184 S.W. 342.] The opinion in that case was based primarily upon the rule in Edwards v. Pike from which case extensive quotations were made.

One of the more recent cases upon the question is that of Higdon v. Channell, supra. In that case Channell was the owner of the property and Higdon and one White were both real estate agents with whom the property had been listed for sale. Higdon spent considerable effort and time attempting to find a purchaser. He finally contacted one Chanan Singh and was the first to show him the property. Although Higdon did not during the negotiations secure any offer from Singh, he never abandoned his efforts to make the sale at the price the property was offered and for which it finally sold. The purchaser Singh, during the negotiations with Higdon, abandoned Higdon and secured the services of White to close the deal. Higdon had no knowledge of the intervention of White in the negotiations until the transaction was closed through White. Although at the time of the consummation of the sale Channell did not actually know that Singh was also Higdon's client, he thereafter paid White the commission with full knowledge that Higdon claimed the same. Higdon sued Channell for the commission alleging that he (Higdon) was the procuring cause of the sale. In the trial of the case the jury found that Higdon was, and that White was not, the procuring cause of the sale. The trial court disregarded the jury's verdict and sustained Channell's motion for judgment, just as the trial court did in the instant case with reference to the finding in appellants' favor. The Court of Civil Appeals affirmed the judgment of the trial court thus holding, in effect, the facts of such case warranted the trial court's finding as a matter of law that Higdon was not the procuring cause of the sale. The holding of the Court of Civil Appeals in that case was also based upon the rule announced in Edwards v. Pike, supra.

Based upon the above holdings of our courts we are of the opinion there was no error in the action of the trial court in disregarding that portion of the jury's verdict favorable to the appellants and rendering judgment for the appellees Pipkin and Branson, the latter being the assignee of the interest of Elliston in the commission.

The motion for rehearing of the appellees is granted, our former opinion reversing and remanding this cause is withdrawn, the above opinion is substituted therefor, and the judgment of the trial court is affirmed.