**OGDEN et al. v. YATES' ESTATE et al.**

**No. 9018, and Motion No. 9615.**

Court of Civil Appeals of Texas. Austin.

June 18, 1941.

On Rehearing July 16, 1941.

Wright, Tupper & Tupper, of San Angelo, for appellants.

Upton, Upton & Baker, of San Angelo, for appellee Frank Miller.

Wilson & Durham, of San Angelo, for appellees the estate of Ira G. Yates, deceased, Mack H. Yates, Ira George Yates, and Ann Yates Corzelius, executors of the estate of Ira G. Yates, deceased, and C. F. Corzelius, husband of Ann Yates Corzelius.

BAUGH, Justice.

Suit by J. H. Ogden and J. C. Renfro, real estate brokers, against the executors of the estate of Ira G. Yates, and Frank Miller, also a real estate broker, for 5% commission on the sale by said Yates estate to J. M. West of 42,369 acres of land in Brewster County, Texas. The allegations were that appellants were the procuring cause of the sale, but that because of the fraud of Miller, the sale was closed through him. Trial was to a jury, but at the close of plaintiffs' evidence, the court instructed a verdict for defendants, and rendered judgment accordingly; hence this appeal.

The Yates estate was represented by J. P. Hill of San Angelo, as its general agent, who had full authority to act in the premises. In 1939, it was decided to sell this land at $7.50 per acre. Hill listed it for sale with several brokers selected by him, three of whom, including Frank Miller, lived at San Angelo. On June 26, 1939, Hill wrote a letter to J. H. Ogden, who resided in Brady, McCulloch County, describing the land in general terms, and stating: "The Executors have put a price of $7.50 an acre, out of which if and when the deal is closed, they will pay a 5% commission. If you desire a listing at the above price and terms you may go to work at it." On June 20, 1939, Ogden wrote a letter to J. C. Renfro at San Angelo, stating that he had this ranch listed for sale from J. P. Hill, and that: "If you can find a buyer for this place I agree to give you ½ of the commission." This was done without the knowledge or consent of Hill or of the Yates estate. On July 1, 1939, Renfro wrote to J. M. West of Houston, stating that "I have for sale" the land involved, describing it, at $7.50 per acre, and that the "owner of this ranch is the Ira Yates estate, * * *." He made no mention of nor did he advise West of either Ogden's or Hill's connection with the matter, but treated the property as listed with him by the Yates estate. West replied to Renfro on July 5, 1939, stating

that he was familiar with a part of this property, having had it leased at one time, would not be interested in it at $7.50 per acre, but that if the owners would be interested in a price of $5 per acre cash, he would look at it at that price. It developed on the trial, however, that West was mistaken as to the identity of this land, having had other lands leased in this area, which he then thought were a part of the lands here involved.

On July 7, 1939, Renfro advised Ogden of the letter from West, and on the same day wrote West another letter, specially commending the ranch to him as being worth more than $5 per acre, and asking West to reconsider his offer and investigate the property. To this letter West did not reply and nothing further transpired between West and Renfro. At no time did Ogden ever communicate with West in any manner, or become known to him as agent for this land. Nor did either Ogden or Renfro ever advise Hill or the Yates estate, until after the sale of the land by Miller, of Renfro's two letters to West, which appear to be the whole of his efforts and services so far as the sale of the ranch to West was concerned.

On August 9th, Miller took up with Hill a sale of the property to West. Miller made three or four trips from San Angelo to Houston on the deal, on three of which Hill accompanied him, taking maps of the ranch and other surveyor's data. Miller also accompanied West on an inspection of the land in Brewster County, procured corrective title instruments required by West to show good title, and actually consummated a final sale of the land at $7 per acre by agreeing to reduce his commission to $5,750, in order to effect such sale.

Neither West nor Miller testified on the trial hereof. Renfro testified that the only authority he had to offer the ranch for sale was that received from Ogden, which fact was never communicated by him nor Ogden to Hill. He did testify, however, that Miller came to him in the early part of July to borrow a map of the ranch; that he then advised Miller that he was trying to sell the ranch himself and declined to lend Miller the map; that he finally did so, however, on the promise of Miller that he would not interfere with, nor try to sell to, any prospective buyer Renfro might have; and that he then informed Miller that West was one of his prospects. Renfro also testified, however, that his wife

was seriously ill at the time, and that he could not, during July, have left her to go to Houston in connection with such sale. It also appears that neither Ogden nor Renfro did anything further, after Renfro's letter of July 7th to West, towards a consummation of a sale of the ranch to West.

█ It is manifest that Renfro never became the authorized agent or broker for the Yates estate to sell this land. It was never listed with him for sale by anyone authorized to do so. In matters of such consequence, involving large sums of money, and under cautious management, as a general rule the owner selects agents or brokers with whose business ability, skill, character, and reputation for integrity he is familiar, and on which he relies. To that extent the employment becomes personal and cannot be delegated by the agent to someone else without the consent of the principal, express or implied. Christian v. Dunavent, Tex.Civ.App., 232 S.W. 875, 877; Sims v. St. John, 105 Ark. 680, 152 S.W. 284, 43 L.R.A.,N.S., 796; 8 Am.Jur. § 58, p. 1015; 12 C.J.S., Brokers, § 22, p. 65.

In the instant case there was not an open listing of the property. On the other hand, Hill had selected three brokers in San Angelo, acceptable and satisfactory to him; and had by letter to Ogden, who lived at Brady in McCulloch County, authorized him to undertake the sale of this ranch. He did not authorize Ogden to sublist the property or delegate such agency to someone else. Particularly, not to someone else in San Angelo, where Hill resided, and where he presumably had already selected all the brokers who were acceptable to him in handling the particular property. It was not shown that Renfro had any office or place of business; but it was shown Hill did not know him and had never seen him before the trial of this case. It may well have been true that in a matter involving such large body of land, large financial resources in the purchase of it, located far distant from San Angelo, requiring the labor, experience, skill and expense which Miller manifestly expended in consummating the sale, Hill would not have entrusted the matter to Renfro. If he were unwilling to do so, certainly Ogden could not clothe Renfro with such authority without Hill's consent.

Nor did Renfro undertake to act through Ogden. In writing to West, Renfro treat-

ed the lands as listed with him, without mention of Ogden, and undertook to deal with West as the agent of the Yates estate. Of course, if all the facts had been made known to Hill, and he had ratified Renfro's acts or closed the deal with West through or by virtue of Renfro's efforts, a different question would be presented. But such is not the case. Hill clearly had the right, as soon as he learned of Renfro's presuming to act as agent for the Yates estate, to repudiate such assumed or purported agency as unauthorized, and deal with the prospective purchaser presented to him by an agent duly selected by him. And this is true even if it be assumed that Hill learned, when dealing with West, that Renfro had written West about the land. Ogden, other than attempting to employ Renfro, had done nothing towards a sale of the land to West.

█ But if it be conceded that, under the facts shown, Ogden was authorized to act in the premises through Renfro, and Renfro's acts be treated as those of Ogden, in so far as the Yates estate, the owner of the land, is concerned, we think, as a matter of law, that no liability to plaintiffs was shown. The rule relied upon by plaintiffs as at least creating a jury issue on their right to recover a commission are fairly well settled. The test of such right is whether the broker was the "procuring cause" of the sale. 7 Tex.Jur., §§ 78 to 82, pps. 474-479. The broker's right to a commission does not necessarily require that he conclude the sale on the terms on which the property is listed with him. If he brings the owner and the purchaser together and the owner concludes a sale on terms satisfactory to himself, the broker has, generally considered, earned a commission. But there must be some reasonable or proximate relationship between the efforts of the broker and the sale of the land. Nor does the failure of the owner to know that the broker produced the purchaser bar a recovery by the broker. Masters v. Hunt, Tex.Civ.App., 197 S.W. 219; Goodman v. Henck, Tex.Civ.App., 295 S.W. 349; Keener v. Cleveland, Tex. Com.App., 250 S.W. 151, 152. But it is not enough that the broker may have merely presented to the purchaser the property offered for sale and may have undertaken to sell it to him. Where, as here, the property is listed for sale with other brokers, and the owner remains neutral, he is liable for commission only to the broker who actually consummates the sale, even though

some other broker had unsuccessfully begun prior negotiations, which were never consummated by him, with the same purchaser. Edwards v. Pike, 49 Tex.Civ.App. 30, 107 S.W. 586; Keener v. Cleveland, supra; Walker v. Van Valkenberg, Tex. Civ.App., 291 S.W. 936; Higdon v. Channell, Tex.Civ.App., 109 S.W.2d 254; Grimland v. William Cameron & Co., Tex.Civ. App., 136 S.W.2d 909; Heath v. Elliston, Tex.Civ.App., 145 S.W.2d 243; Berry v. Wittenburg, Tex.Civ.App., 145 S.W.2d 673. Such is the case here presented. We think the Yates estate, under the undisputed facts, was not as a matter of law liable to Renfro for a commission, for the reason that Miller was clearly shown to have actually consummated the sale of this land to West.

Under the allegations of fraud on the part of Miller, assuming that Renfro was authorized to sell the land, the testimony of Renfro that Miller (who did not testify) had, under false promises, procured from him the name of West as a prospective purchaser, and was thus enabled to contact him and later consummate the sale, we think there was presented a jury issue as to whether Ogden and Renfro were entitled to recover from Miller whatever compensation they might be able to show their services were worth. Such is the holding clearly laid down by the Commission of Appeals in Keener v. Cleveland, supra, even though the broker was denied recovery against the owner. As to this phase of the case, therefore, we think the trial court erred in its judgment.

In so far as the trial court rendered judgment in favor of the Yates estate and its executors, and against appellants, the judgment is affirmed. As between appellants and the appellee Miller, the judgment is reversed and the cause is remanded.

Affirmed in part and in part reversed and remanded.

On Appellees' Motion for Rehearing.

■ Appellees urge on their motion for rehearing that we erred in reversing and remanding the cause as between appellants and appellee Miller, in that the pleadings of appellants sought no recovery as against Miller, on quantum meruit or otherwise, because of his alleged fraud upon them as alleged in their petition. In this we have concluded that appellees are correct. A careful re-examination of the pleadings discloses that appellants sought no judgment against Miller individually on this ground. Their entire cause of action asserted was that they, and not Miller, were the procuring cause of the sale to West, and but for Miller's alleged fraud, they would have consummated the sale themselves. That they in fact found the purchaser who purchased the lands on terms satisfactory to the owner, and were, under Hill's letter to Ogden, entitled to a commission from the owner of 5% on the entire purchase price; and that Miller was entitled to nothing. While fraud was alleged to have been perpetrated by Miller, he was obviously made a party defendant because the owner had, in the contract of sale to West, agreed to pay Miller a commission, to which they alleged he was not entitled. No alternative relief was asked for against Miller. We find no pleadings, therefore, which would authorize a recovery by appellants against Miller for the value of their services, because of his alleged fraud. That being true, no such recovery was warranted, even had the proof been sufficient to sustain such a recovery. Jennings v. Texas Farm Mortgage Co., 124 Tex. 593, 80 S.W.2d 931, 934; Smith v. Miller, Tex.Civ.App., 300 S. W. 953; 25 Tex.Jur., Sec. 116, p. 505. Under these circumstances, it was not error for the trial court to render judgment against appellants as to all appellees.

That portion of our former judgment reversing and remanding the cause as between appellants and appellee Miller is therefore set aside; and the judgment of the trial court is in all things affirmed.

Appellees' motion for rehearing granted.