RAMSEY v. GIBSON. (No. 1643.)

(Court of Civil Appeals of Texas. Texarkana. May 11, 1916.)

1. BROKERS ☞8(3), 86(4) — ACTIONS — EVIDENCE—PROCURING CAUSE.

Evidence *held* to support finding of employment of plaintiff as broker, and that he was the procuring cause of sale of the property.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 9, 117; Dec. Dig. ☞8(3), 86(4).]

2. BROKERS ☞53—COMPENSATION—PROCURING CAUSE.

Where plaintiff, employed as broker, was the procuring cause of sale, although the property was for sale by other agents, and plaintiff knew that it was, he was entitled to compensation.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 74; Dec. Dig. ☞53.]

3. TRIAL ☞219—INSTRUCTIONS—DEFINITION OF TERMS — EFFICIENT AND PROCURING CAUSE.

On broker's suit for commissions, it was not error to refuse to instruct as to meaning of "efficient and procuring cause," as the words are not technical, but are in common use.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 489; Dec. Dig. ☞219.]

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Action by F. O. Gibson against J. S. Ramsey. From a judgment for plaintiff, defendant appeals. Affirmed.

In July, 1913, appellant was the owner of a farm consisting of 289.8 acres of land in Hill county, 21 or 22 miles from Hillsboro, which he had "listed" with real estate brokers in Grandview and Itasca for sale at $60 per acre. Afterwards he also authorized appellee to sell the land at that price, agreeing, if appellee did sell it, to pay him a commission of 5 per cent. Joe P. Thompson and Guy Tarlton, as partners, were real estate brokers in Hillsboro. Appellee took up with Hawkins and West, of Hillsboro, and also with one Cunningham, of the same place, the matter of buying the land, and induced them to agree to go and look at it. He arranged to himself go with Hawkins and West, and with Thompson to go with Cunningham, to the land on the same day. The understanding between appellee and Thompson, which induced the latter to go with Cunningham, was that he (Thompson) would be "paid for his trouble" by appellee if Cunningham purchased the land. On the day agreed upon the two parties went from Hillsboro to appellant's farm. Appellee, with Hawkins and West, arrived there first, and with appellant went over the land. Thompson, with his partner and Cunningham and his wife, reached appellant's place about the time appellee, Hawkins, and West were ready to leave there on their return trip to Hillsboro. According to the testimony of appellee and Thompson,

which is denied by appellant, appellee before leaving requested appellant to show the land to Cunningham and the party with him. A few days later appellant and appellee met each other in Grandview. Appellant said he thought Cunningham would buy the place. Appellee replied that Hawkins and West wanted the refusal of it, and suggested that they be given time to determine whether they would buy it or not. Appellant suggested to appellee that he communicate with them over the telephone and ascertain if they wished to buy. Appellee did this, and on being told by Hawkins and West that they had not determined whether they wished to buy or not, and that he need not wait further on them, told appellant that "it was immaterial to him [me] who bought it, and if Mr. Cunningham wanted it to let him have it." A few days later appellant sold the land to Cunningham for $60 or more per acre, and on terms which were satisfactory to him. At a time not directly shown by the testimony, but which, it inferentially appears, was when he, with his partner, Thompson, and Cunningham and his wife, were at appellant's looking at the farm, as stated above, Tarlton was authorized by appellant to sell the land. The deeds made by appellant to Cunningham were prepared and executed in Tarlton and Thompson's office in Hillsboro, as was also an agreement in writing, executed by appellant, Cunningham, and the Guy Tarlton Company, which was the firm name of Tarlton and Thompson, reciting that Cunningham was to retain $900 of the purchase price he had agreed to pay appellant, with which he was "to settle with Guy Tarlton Company for their commission for making the sale," and in which it was further recited that "the matter of the commission settlement is a matter left entirely with the said C. L. Cunningham and Guy Tarlton Company." Appellant testified that, before he sold the land to Cunningham, Tarlton told him that Cunningham "wanted him (appellant) to take care of Gibson," and that he replied he did not "suppose Mr. Gibson wanted anything out of this trade." Thompson, Tarlton's partner, testified:

"The way I came to take Mr. Cunningham out there to see the place, I met Mr. Gibson on the south side of the square, and he says to me, 'Joe, I have got some prospective buyers for a place up between Grandview and Itasca,' and it seems to me like it was 289 acres, and he says, 'I believe one of the parties will buy,' and he says, 'Now, I am going with Mr. Hawkins and Dick West,' I believe it was, and he says, 'I have put the proposition up to them, and also to Mr. Cunningham, and if you will go and take Mr. Cunningham over there, if we make the deal I will pay you for your trouble,' or something to that effect. Well, I told him 'All right,' and so the next morning I went out there with Guy Tarlton and Mr. Cunningham and his wife to the place. * * * I did not tell Mr. Ramsey,

that morning that he showed Mr. Cunningham over the farm, that Mr. Cunningham was our client, and not Mr. Gibson's. I did not at any time learn that Guy Tarlton was trying to make the trade over Fred Gibson. Guy got it, just like I did, through Fred Gibson. Of course, you understand, we were partners, and Guy went with me when we carried Mr. Cunningham up there, and he was in the trade, just like I was."

Appellant testified that he first met and became acquainted with Tarlton on the occasion mentioned above, when he came with Thompson and Cunningham and his wife to look at the farm. He further testified that "no one other than Guy Tarlton ever told him [me] that Mr. Cunningham wanted to buy the land," and that he told appellee, when he met him at Grandview on the occasion when appellee telephoned Hawkins and West as stated above, that Tarlton "was going to sell the place to Mr. Cunningham."

Tarlton did not testify as a witness, and if he had anything to do with the sale made to Cunningham, further than has been stated, the record does not show it.

This suit was by appellee against appellant to recover $795, which the former claimed was the amount due him by the latter as commission on the sale made of the land. On special issues submitted to them the jury found: (1) That appellant agreed with appellee to pay him a commission of 5 per cent. on the purchase price of the land if he found a purchaser for it at $60 per acre on terms suitable to him, appellant; (2) that appellee was the "efficient or procuring cause of the said Cunningham purchasing the property"; (3) that Guy Tarlton was not "the procuring cause" of the sale made to Cunningham; (4) that appellant, at the time the sale was made, "had his land for sale in the hands of several agents"; and (5) that appellee knew that the land was "for sale in the hands of other agents." On these findings the court rendered judgment in appellee's favor against appellant for said sum of $795.

M. S. Wood, of Itasca, and Morrow & Morrow, of Hillsboro, for appellant. Shurtleff & Cummings and Wear & Frazier, of Hillsboro, for appellee.

WILLSON, C. J. (after stating the facts as above). [1-3] It is apparent from the statement above that there was testimony amply sufficient to support the findings made by the jury; and it is further apparent that the findings warranted the judgment rendered. The court did not err, we think, in refusing to instruct the jury as to the meaning of the phrase "efficient or procuring cause." The words are not technical, are in common use, and presumably their meaning was as accurately known to the jury as to the court.

The judgment is affirmed.