of Leonard v. State, 53 Tex. Cr. R. 187, 109 S. W. 149, and Graham v. State, 72 Tex. Cr. R. 9, 160 S. W. 714, have no application whatever.

The other bill to the remarks of the district attorney is too trivial to even merit mention, much less be made a ground for reversal. I quote it:

"Be it remembered that, on the trial of the above entitled and numbered cause, while making his opening argument to the jury, the district attorney made the following statement: 'You know the defendant is guilty, because the officers have been "chousing" him for the last five or six years for violating the local option laws.' To which statement, when made, counsel for defendant immediately objected and excepted, because said statement was unsupported by the evidence and was highly prejudicial to the defendant; whereupon the court instructed the jury not to consider any statement made by the district attorney concerning the defendant being 'choused' for violating the local option laws. To which statement made by the district attorney the defendant then and there excepted in open court, and now tenders his bill of exception No. 3, and asks that same be examined, approved, and ordered filed as part of the record in this case. Y. W. Holmes and W. W. Kirk, Attorneys for Defendant.

"Examined, approved, and ordered filed this, the 14th day of April, 1917. R. C. Joiner, Judge Presiding."

Appellant was assessed the lowest punishment for the crime he had, as the evidence shows, without any doubt, purposely, intentionally, and deliberately committed. Bass v. State, 16 Tex. App. 69; Pierson v. State, 18 Tex. App. 524; Tweedle v. State, 29 Tex. App. 586, 16 S. W. 544; House v. State, 19 Tex. App. 227; Mooney v. State, 76 Tex. Cr. R. 539, 176 S. W. 57. There is no need to collate the cases. They are innumerable. I am confident no case can be found in the books that will sustain the majority opinion herein on this point.

This case should have been affirmed. I dissent to its reversal.

---

## MASTERS v. HUNT et al. (No. 8707.)

(Court of Civil Appeals of Texas. Ft. Worth. June 30, 1917.)

1. BROKERS ☞8(3), 86(1) — CONTRACT AND PERFORMANCE THEREOF—EVIDENCE—SUFFICIENCY.

Evidence *held* to sustain a jury finding that there was an agreement between plaintiff and defendant that in consideration of plaintiff's surrender of defendant's note defendant would sell a tract of land belonging to plaintiff, and that defendant performed such contract.

2. BROKERS ☞53—COMPENSATION—PROCURING CAUSE OF SALE.

It is not necessary that a real estate broker shall have personally conducted the negotiations or should have been present when the sale of the land was completed; but, if he gave the original impulse to the transaction by bringing the land to the attention of the purchaser, he was the procuring, moving cause of the sale in a substantial sense and entitled to his commission.

3. BROKERS ☞55(1) — COMPENSATION — PROCURING CAUSE OF SALE.

If the success of a transaction for the sale of land is directly attributable to the broker originally employed, his right to commissions cannot be defeated by the mere fact that the negotiations were conducted, or the transaction finally consummated, through the medium of another broker, although the terms of the first negotiations may have been varied and commissions paid to such other broker.

4. BROKERS ☞53—COMPENSATION—KNOWLEDGE OF OWNER.

Where the owner of land, after employing defendant to sell it, sold it through the medium of another broker, it was immaterial to defendant's right to recover for his services that the owner did not have knowledge that the purchaser had been induced to buy through defendant's efforts.

5. BROKERS ☞86(4) — COMPENSATION — EVIDENCE—SUFFICIENCY.

Evidence *held* not to support a claim that defendant was not entitled to his commission on the ground that he had failed to procure a purchaser who was able and willing to purchase on the terms authorized.

Appeal from Denton County Court; Fred M. Battorff, Judge.

Action by G. C. Masters against J. H. Hunt and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Joe S. Gambill, of Denton, for appellant. A. Q. Mustain, of Aubrey, and Sullivan & Hill and Luther Hoffman, all of Denton, for appellees.

CONNER, C. J. Appellant, Masters, sued to recover a balance of $75 alleged to be due upon a promissory note executed by the appellee J. H. Hunt, and to foreclose a chattel mortgage lien upon personal property in which the appellee First Guaranty State Bank of Aubrey, Tex., was alleged to claim an interest, and which property was of the alleged value of $500. Hunt defended on the ground that the alleged balance had been liquidated under the terms of a contract made between plaintiff, Masters, and the said Hunt for the sale of certain lands owned by Masters. A jury trial resulted in a verdict and judgment for the defendants, and the plaintiff has appealed.

The assignments of error only call in question the sufficiency of the evidence to sustain the verdict and judgment. It is insisted that the court should have given a peremptory instruction in appellant's favor, or, if not, that the verdict is unsupported, "in that the preponderance of the evidence shows that the defendant Hunt is not entitled to recovery, because the preponderance of the evidence shows that the Barton-Yancy Realty Company, and not the defendant Hunt, effected the sale of plaintiff's land."

The substance of the evidence relating to the controverted issues of fact and upon which the contentions noted are based is as follows: Hunt testified that Masters proposed that, if he (Hunt) would sell a tract of land for

Masters owned by the latter near Club Lake in Denton county, as compensation therefore he would surrender the note as fully discharged and paid. Hunt testified that he accepted this proposition and immediately set about trying to sell the place. This testimony was substantially corroborated by the testimony of Nola Wilson and her husband, and Ruby Hunt, who testified that they were present at the time of the agreement referred to. J. H. Hunt further testified that on the night of the same day he began his efforts to sell the Masters place, and saw a Mr. W. H. Peden, told Peden about the Masters place, the terms upon which it could be bought, the number of acres in it, etc., and suggested that he had a man in mind, Tom Booe, to whom Peden could sell the place at a profit if he (Peden) would take in on the trade with Booe certain property the latter wanted to trade. There was evidence to the further effect that Peden later conferred with Booe, and yet later went to the Barton-Yancy Realty Company with whom the Masters place had been listed, and proposed a trade for the Masters place. The proposed trade was later effected by Peden giving to Masters a $4,500 note owned by him, together with a further note executed by Peden. Peden later sold the place to Booe, as originally suggested by Hunt. Hunt did not show the land to Peden, nor did he participate in the formal negotiations ending in Peden's purchase. Both Masters and a member of the Barton-Yancy Realty Company testified that they did not know of Hunt's participation in the transaction. Peden testified, however, that Hunt was the "first man who ever mentioned to me that Masters had a place for sale or trade. I did not know anything about the place until Hunt told me about it. He was the first man to put me in touch with the Masters place," and otherwise corroborated Hunt as to what occurred between them. Booe testified that he purchased the Masters farm from Peden; that "Mr. Hunt talked with me about buying the place long before I saw Peden"; that "Mr. Peden soon after I had talked with Hunt called me over the telephone and told me about the place, and I went down and looked at it."

The court submitted the issue of the alleged agreement between Hunt and Masters to the jury and, among other things, after defining the terms "moving, procuring and efficient cause of the sale," further instructed the jury to the effect that, unless they found that Masters had entered into the agreement as alleged and that "Hunt was the moving, procuring, and efficient cause of the sale of the farm," to find for the plaintiff.

[1, 2] We are of the opinion that the evidence not only required the submission of the issue to the jury, but also that it is sufficient to support the jury's finding in appellee Hunt's favor. It was not necessary, as the court charged the jury, without objection, that the agent Hunt should have personally conducted the negotiations or should have been present when the sale was completed. The original impulse was evidently given by Hunt. Peden, immediately after the conversations detailed by Hunt, pursued the matter until he finally completed the purchase, and later sold to Booe, a purchaser also furnished by Hunt. Hunt therefore was the procuring, moving cause of the sale by Masters in a very substantial sense. In 4 R. C. L. par. 46, p. 304, it is said, among other things, that:

"The duty of a broker employed to sell is usually performed when through one means or another he has brought his employer and a customer acceptable to the latter into negotiations with one another and his service in doing so may be said to be the procuring cause of the resulting deal between them."

The declaration of the author is supported by the citation of numerous authorities.

[3] One of appellant's contentions is to the effect that appellee Hunt is not entitled to recover inasmuch as the sale under consideration was finally consummated through the Barton-Yancy Realty Company, to whom the evidence shows appellant paid commissions. But in relation to this subject the writer just quoted (paragraph 57, p. 319), among other things, further says:

"In the absence of an express contract to the contrary, a broker can lay no claim to commissions upon a transaction negotiated without his aid through the efforts of another; but, where his services as well as those of another broker has contributed conjointly to the successful termination of the negotiations in question a different problem arises, the solution of which depends upon whose efforts were the primary, proximate, and procuring cause of the deal negotiated. If the success of the transaction is directly attributable to the broker originally employed, his right to his commissions cannot be defeated by the mere fact that the negotiations were conducted, or the transaction finally consummated, through the medium of another broker, even though the terms of the first negotiations may have been varied."

[4] The quotation just made furnishes, we think, a sufficient answer to the contention last noted. Nor is it material that appellant should have had knowledge of appellee Hunt's agency in the actual sale. As illustrating this, we quote from the headnote in the case of McDonald v. Cabiness, 98 S. W. 943, later affirmed by our Supreme Court in 100 Tex. 615, 102 S. W. 721. The headnote reads:

"Where an owner of standing timber, after employing plaintiff to sell the same, sold it himself to a purchaser procured by plaintiff, it was immaterial to plaintiff's right to recover for his services that the owner was not guilty of fraud in relation to such sale, or that he should have had previous knowledge that the purchaser had been induced to buy through plaintiff's efforts."

[5] A further suggestion in argument is to the effect that the terms of the alleged contract did not embody authority to make an exchange, and that it has not been made to appear that the sale or exchange to Peden

was upon the terms upon which Hunt was authorized to negotiate the sale or exchange; but we find no substantial foundation in the evidence for these contentions. Hunt in his testimony relating to the contract seems to use the terms "sale" and "exchange" interchangeably, and all of the parties testifying referred to the exchange made between Masters and Peden as a "sale." Appellant Masters testified, but he did not develop any particular terms of sale or of an exchange which Hunt departed from, or which were variant from the terms upon which the trade was finally consummated with Peden, and, while appellee Hunt testified that Masters gave him the terms upon which he was willing to sell, no specific terms were mentioned, nor did appellant, on cross-examination, seek to develop any specific terms, and we cannot think that the evidence considered as a whole furnishes any substantial foundation for a claim that appellee was not entitled to his commission on the ground that he had failed to procure a purchaser both able and willing to purchase on the terms authorized.

We conclude that all assignments of error must be overruled, and the judgment affirmed.