## TEXAS RANGER PRODUCING & REFINING CO. et al. v. WITT et al.*
### (No. 8881.)

(Court of Civil Appeals of Texas. Dallas. Nov. 3, 1923. Rehearing Denied Dec. 8, 1923.)

**1. Brokers ⊕═82(4) —Allegations held to afford basis for recovery on quantum meruit.**

An allegation that plaintiffs, as brokers acting under the authority of defendants, procured the sale of an oil lease on terms satisfactory to defendants, and that defendants promised to pay plaintiffs the reasonable value of their services in procuring the sale, was a sufficient basis for the proof .and recovery on quantum meruit, under an implied contract binding defendant to pay a reasonable sum for the work performed and the services rendered.

**2. Brokers ⊕═53—Broker procuring sale fixes right to reasonable compensation.**

In an action to recover commissions for procuring the sale of defendants' oil lease, if plaintiffs were the efficient and procuring cause of the sale, their right to a reasonable commission was fixed.

**3. Appeal and error ⊕═1001(1)—Whether brokers' efforts were cause of sale and what was reasonable fee held a question for jury.**

Whether the efforts of brokers were the procuring cause of the sale of defendants' oil lease, as well as what was a reasonable fee for such services rendered, was a question for the jury and not the appellate court, and, where there was substantial evidence, the finding will not be disturbed.

**4. Appeal and error ⊕═1056(4)—No error in excluding testimony that purchaser deducted commission from cash consideration of sale.**

The court did not err in excluding testimony that the purchaser of an oil lease deducted from the cash consideration of the sale a commission for the agent, whom he claimed made the sale, where the fact was before the jury, and its deduction amounted to a payment of commission by the purchaser for services, which the jury found were performed by plaintiffs as brokers, under the authority of defendants, with their approval and ratification.

**5. Brokers ⊕═85(5)—No error in excluding testimony as to speculative values of deferred part of consideration for sale of an oil lease.**

The court did not err in excluding testimony which embodied an estimate of values and a speculation as to the value of the deferred part of the consideration for the sale of an oil lease, where the commisison, which plaintiffs were to receive as brokers in effecting the sale, was not dependent upon amount which defendants might finally receive from deferred payments, but upon the amount the parties to the sale estimated the lease to be worth.

**6. Brokers ⊕═88(14)—Finding that brokers had no contract for commission not in conflict with finding that they were entitled to reasonable commission.**

In an action to recover commission for effecting sale of an oil lease, a finding that plaintiffs as brokers did not have a contract with defendants for commissions is not in conflict with a finding, which is sustained by the evidence, that plaintiffs agreed to waive the terms of the contract, and to rely on defendants' promise of a fair commission in effecting the sale.

Appeal from District Court, Dallas County; Royall R. Watkins, Special Judge.

Action by W. Witt and others against the Texas Ranger Producing & Refining Company and others. Judgment for plaintiffs and defendants appeal. Affirmed.

Head, Dillard, Smith, Maxey & Head and J. F. Holt, all of Sherman, and Martin B. Winfrey and Phillips, Townsend & Porter, all of Dallas, for appellants.

Goree, Odell & Allen, of Fort Worth, and Carden, Starling, Carden, Hemphill & Wallace, of Dallas, for appellees.

HAMILTON, J. This suit was instituted by appellees to recover a broker's commission alleged to have accrued from the sale of an oil and gas lease and appurtenances to it. The case was tried before the court and a jury. It was submitted to the jury upon special issues, and, based upon the findings of the jury, judgment for appellees was rendered.

Appellants owned a 40-acre oil and gas lease in Wichita county, Tex., designated as "Thrift No. 2," in 1919. During that year appellants placed it on the market for sale.

Appellees were oil property brokers, who made their headquarters in Fort Worth. Appellants' home office was in Dallas, and appellees and various others, engaged in different phases of the oil business and related business, frequented appellants' offices. In the fall of 1919 appellees called at appellants' office in Dallas, accompanied by two representatives of W. G. Weimer, of Kansas City, for the purpose of negotiating the sale of a lease known as the "Healdton lease," in Oklahoma, owned by appellants. This particular property at that time had already been disposed of by appellants. Appellee Witt returned to Fort Worth with Halbert and Bond, Weimer's representatives, and, on the way to Fort Worth from Dallas, it occurred to him to mention to these gentlemen that the property described in this suit, for the sale of which appellees asserted their right to a commission, was for sale by appellants. Upon arrival at Fort Worth he communicated with Cecil H. Smith, one of appellants' rep-

resentatives in Dallas, and was informed by Smith that the property was for sale for $2,250,000. Witt testified that prior to this time he had a conversation with appellants' representative in their office at Dallas, and that in this previous conversation appellants submitted to him a price of $2,500,000, which was later reduced to $2,250,000. He testified that in the first conversation, wherein a price of $2,500,000 was made, he was to receive a commission of 5 per cent. of that amount in the event he effected a sale; he testified that, about two months after this' occasion, on which ·a price of $2,500,000 was submitted to him, appellants, in their office at Dallas, had still another transaction with him, whereby J. D. Wade and Cecil H. Smith, Jr., appellants' representatives, listed the property with him for sale at $2,250,000, appellants to receive $2,000,000, net, and the excess of $250,000 should be divided equally between appellees and Smith and Wade and the latter's associates. Soon thereafter he met Halbert in Fort Worth, shortly before he brought Halbert and Bond in contact with appellants with the object of effecting a sale of the Healdton property. Following his long-distance telephone conversation from Fort Worth with appellants in Dallas, in which he was informed that the "Thrift No. 2" was still on the market, he induced Halbert and Bond, Weimer's representatives, to inspect the property. After making an inspection of the property, Halbert returned to Fort Worth, and stated to appellees that he would not recommend to his employer, Weimer, the purchase of the property at $2,250,000, but that he would advise a purchase of it at $1,750,000, and that Weimer might pay as much as $2,-000,000, and requested appellee Witt to ascertain if he could get a price of $2,000,000 for it. According to his testimony, he took the matter up with Mr. Smith, who agreed to a sale at $2,000,000, and agreed to pay appellee a commission of 2½ per cent. on that price. He testified that Smith at the time made a typewritten memorandum of the agreement, and what purported to be such memorandum was introduced in evidence. He further testified that following this transaction Mr. Smith stated that he would have to have Mr. J. D. Wade, another of appellants' managers, approve the agreement, and that Smith went into Wade's office, returned in about 15 minutes, and told appellee Witt that Wade approved the transaction, and to proceed with the deal. He testified that he returned to Fort Worth immediately, and told Halbert that appellants had agreed to sell the property for $2,000,000. He testified that letters and telegrams, which he saw, thereafter passed between Halbert, who remained in Fort Worth, and Weimer during the period of several days. After the passage of several days, a Mr. Alsworth, in appellants' office, whom appellee understood to be a director of appellant Texas Ranger Producing & Refining

Company, called him by telephone, and told him that he, Alsworth, had been advised by Mr. Wade that it was impossible to sell the property for $2,000,000, and that appellants wanted to sell it for $1,750,000, and, in the event a sale for this price was made, appellants could not pay a commission of $50,000, "but would take care of" appellees. He further testified that, in response to this suggestion, from which he understood that appellees were to receive a reasonable commission in proportion to the amount for which the property sold, he sent a telegram to Mr. Wade at the Muelbach Hotel in Kansas City, advising his willingness to make any necessary sacrifice to effectuate the deal. The telegram he referred to in his testimony was as follows:

"Understand three parties making same offer. Hope you close with Weimer. Any sacrifice on our part you and Smith think necessary will be perfectly satisfactory."

On October 4, 1919, appellants closed the contract with Weimer for $2,000,000, to be paid as follows: Weimer assumed payment of an indebtedness of $325,000, agreed to pay appellants $250,000 in cash, execute a note for $185,000, payable in six months, and bound himself to pay $1,240,000 out of the proceeds of seven-sixteenths of the oil produced from the lease. On November 3, 1919, two separate conveyances were executed to Weimer by appellants, which conveyances jointly recited a consideration of $750,000 in cash, and obligations for $1,240,000, payable out of the proceeds of seven-sixteenths of the oil to be produced from the lease.

Witt testified that he devoted himself to the undertaking of making the sale during two or three weeks, and that he had frequent conversations with Halbert and Bond about it. The testimony of Bumpass and that of Halbert corroborates Witt's testimony in material respects. Letters and telegrams which also tend to support it are found in the record.

The special issues submitted and the respective jury responses were these:

"Did the defendants, acting by and through J. D. Wade and Cecil H. Smith, Jr., or either of them, authorize the plaintiffs, Witt and Bumpass, or either of them, to undertake to effect a sale, or find a buyer for the oil property in question? Answer: Yes.

"Did the defendants, acting by and through J. D. Wade and Cecil H. Smith, Jr., or either of them, agree with Witt and Bumpass, or either of them, to pay a commission for effecting a sale of, or finding a purchaser for, the property in question? Answer: Yes.

"If you have answered question No. 2, 'Yes,' then will you answer this question, being question No. 3, but if you have answered such question No. 2 'No,' then you need not answer this question: Question: What commission, if any, was agreed to be paid the said Witt and Bumpass, or either of them? Answer: Witt and Bumpass were to receive a commission of $125,000, if property was sold for $2,250,000,

or to get one-half of the proceeds in excess of $2,000,000."

"Did C. J. Alsworth state or represent, in substance and effect, to the plaintiff W. Witt that a trade could not be closed with Weimer, for the sale of the property in controversy for $2,000,000, and that they could only receive $1,750,000 therefor, and that in order to close the trade with Weimer it would be necessary to make some concession on his commission, and that it would be satisfactorily adjusted with him by Wade and Smith? Answer: Yes.

"If you have answered the foregoing question No. 4, 'Yes,' you will then answer the following question: Was the telegram sent by the plaintiff W Witt to J. D. Wade at Kansas City, of date October 4th, which has been offered in evidence, induced by and sent in reliance upon such statement and representations, if any, of the said C. J. Alsworth? Answer: Yes.

"Were the plaintiffs, or either of them, the procuring cause of the sale in question? Answer: Yes.

"Who presented the property to Weimer for purchase? Answer: Mr. Witt, through Bond & Halbert, Weimer's agents.

"What was the reasonable value of the services, if any, rendered the defendants, by either or both of the plaintiffs in connection with the sale of said property? Answer: $25,000.

"Special issue No. 1, given at the request of defendants, and the answer of the jury thereto are as follows: Did the plaintiffs have a contract with defendants to make a sale of the properties owned by defendants in the Burk-Waggoner field for the sum of $2,000,000, $1,000,000 cash, and $1,000,000 to be paid in notes within a period of 12 months, and to receive a commission of 2½ per cent. for making such sale? Answer: No."

Appellants' first proposition is as follows:

"Appellees having pleaded, as a basis of recovery, an express contract with appellants to cause the sale of the lease for $2,000,000 for a commission of 2½ per cent., and that being the only contract about which there is any evidence, except one which both the pleadings and the evidence showed was superseded, and, the jury having found that no such contract was made, it was the duty of the court to set aside the finding, or enter judgment for appellants."

It is essential to an understanding of the views by which we test the merits of this proposition that we epitomize the allegations of the petition: Appellees pleaded an express contract, alleging that they were employed by appellants to sell a described 40-acre oil lease in Wichita county, Tex., for $2,000,000 for an agreed commission of 2½ per cent. of the sale price; and it was alleged that under the contract, if the properties could be sold for $2,250,000, appellees were to receive a commission of one-half of any amount that might be realized or contracted to be paid in excess of $2,000,000; and that thereafter appellants, acting through their duly constituted agents and representatives, employed appellees, as brokers and agents, to procure a purchaser for $2,000,000, the terms of the sale at which the property was thus listed with appellees, according to their allegations, being payment of $1,000,000 cash at the time of the sale, and the balance of $1,000,000 to be represented by notes evenly extended over a period of 12 months, or such other terms as might later be agreed upon and accepted by appellants. It was alleged that the employment was accepted upon these terms. It was alleged that immediately after such employment appellees began efforts to find a purchaser, and that, as a direct and proximate result of their efforts, within a few days subsequent to the date of employment the sale of the property was contracted to be made to W. G. Weimer, of Kansas City, Mo., at a price of $2,000,000, and upon terms satisfactory to and accepted by appellants; and that thereafter the sale was fully completed, and the properties delivered by appellants to Weimer, whereupon appellants became bound and promised under the contract between them and appellees, the purposes of which were substantially alleged as above outlined, in the sum of $50,000 as their commission.

In the alternative, it was alleged that in the event appellees should be mistaken in their allegations to the effect that the sale was made to Weimer upon the same terms stated in the agreement alleged to have been made between appellants and appellees, as above outlined, or that if they should be mistaken as to the amount of commissions to be paid for making the sale, then, and in such event, that appellees acted under the authority of appellants in their efforts, which resulted in the procurement of the sale to be made as alleged, and that the sale was made for $2,000,000 upon terms and conditions satisfactory to, ratified and accepted by, appellants, who knowingly accepted and availed themselves of the fruits of appellees' efforts set forth in the petition, and, for this reason, at the consummation of the sale actually made, appellants promised and became liable to pay appellees the reasonable value of their services in procuring the sale to be made, and the value of such services were alleged to be 2½ per cent. of the purchase price of the sale, or $50,000. It was alleged by appellees that, as appellants' brokers and agents, acting under the latter's authority, they submitted the properties involved in this sale to the duly authorized agents and representatives of Weimer, and placed appellants in touch with and in communication with Weimer, submitting to Weimer's representatives the proposition for the sale of the property for $2,000,000, and caused and procured it to be submitted to Weimer by his duly authorized agent—Weimer thereafter accepting it and purchasing it for this sum as the result of appellees' efforts as appellants' agents and brokers, and appellees pleaded adoption of

all the preceding parts of the petition not inconsistent with the allegations contained in this alternative count.

[1] While the jury found in answer to appellants' requested special issue No. 1 that appellants did not have a contract with defendants to make the sale of the properties for the sum of $2,000,000, $1,000,000 cash and $1,000,000 represented by notes extended over a period of 12 months upon a 2½ per cent. commission basis, as the express contract was alleged to be, yet the allegations of facts descriptive of the conversations, acts, and dealings of the parties, we think, clearly reveal an implied understanding that appellees were to receive a reasonable commission for the services which they alleged they performed as brokers, with the knowledge and approval of appellants. Accordingly, we hold that the pleading was a sufficient basis for the proof and recovery of quantum meruit, under an implied, if not an express, contract binding appellants to pay appellees a reasonable sum for the work performed and the services rendered. McDonald v. Cabiness, 100 Tex. 615, 102 S. W. 721; Ford v. Cole (Tex. Civ. App.) 195 S. W. 661.

[2, 3] Exclusively considering the testimony adduced in behalf of appellees and clothing it with credibility, as the jury seems to have done, then they were the procuring cause of the sale. This testimony establishes that the activities of these agents, with the knowledge and assent and ratification of appellants, directed Weimer's representatives' attention to the properties, and set in motion the negotiations which finally terminated in the sale being effected. Although appellees did not, themselves, consummate the sale, which was closed through direct dealings between Weimer and appellants, yet appellees' evidence establishes that the negotiations which they, themselves, opened with Weimer continued practically without cessation until the sale was concluded. There was no breaking off and complete abandonment of the deal from the beginning of the transaction described in appellees' testimony until the sale was concluded. The fact that appellants themselves concluded the sale at a higher price than that at which they stated to appellees it could be concluded, when appellees agreed to abandon the alleged commission they asserted themselves to be entitled to under the contract, does not tend to-release appellants from liability to pay a reasonable commission under appellees' pleadings and evidence. Appellees' evidence sustains the conclusion that their efforts to effect a sale did not result in failure and a termination of negotiations. The negotiations were merely continued unbroken by direct dealings between the principals. If appellees were the efficient and procuring cause of the sale, that is, if, under contract as brokers with appellants, they set in motion

the chain of events which finally culminated in the transaction, then, at its termination, their right to a reasonable commission became fixed. Whether or not appellees were the procuring cause of the sale, as well as what was a reasonable fee for such services as they rendered, being altogether issues of facts for the jury, this court is precluded from proceeding further than to determine whether or not there was any substantial evidence to justify the findings. Goodwin v. Gunter, 109 Tex. 56, 185 S. W. 295, 195 S. W. 848; Masters v. Hunt (Tex Civ. App.) 197 S. W. 219; Ford v. Cole, supra.

[4, 5] Appellants sought to elicit proof from their witness Cecil H. Smith, Jr., while he was testifying, in their behalf, that Weimer, as a part of the trade, reserved the right to deduct from the cash consideration $50,000 commission, claiming that the trade had been made by E. A. Bond as a broker and agent; also, that instead of being cash, $185,000 of the recited cash consideration was received in Weimer's personal notes, and that the $1,240,000 to be paid in oil, in view of the fact that it bore no interest and would not be paid until long after the date of the contract, if at all, and in view of the further fact that production of oil wells is uncertain, and wells also frequently cease to produce at all, the obligation for $1,240,000 at the time of the sale was in fact not worth more than 40 per cent. of that amount. While J. D. Wade was testifying as a witness for appellants, he was asked what the consideration for the property sold to Weimer was, and, upon objection being made in behalf of appellees, the testimony was excluded. The answer would have been, had he been permitted to testify, that he got a note for $185,000, $5,500 in cash, and an obligation for $1,240,000 payable in oil, and that the remaining $70,000 of the $2,000,000 consideration was appropriated as follows: $20,000 was withheld by Weimer as the estimated value of the oil runs from the property between the date of the contract and the time of the delivery of the property, to which oil runs the buyer would be entitled under the terms of the contract, and that the remaining $50,000 of the $70,000 balance was disposed of by check drawn by Weimer in favor of Bond as a commission by agreement between Wade and Weimer.

We do not think there was harmful error in the action of the court complained about in these respects. In the first place, as we understand the record, the fact that the $50,000 was deducted by Weimer was before the jury. Furthermore, its deduction, under the circumstances revealed, amounted, in effect, to the payment of a commission by appellants to Bond for the services which the jury found under competent evidence to have been performed for appellants by appellees under authority of appellants, and with the latter's approval and ratification. The deduction of

the $50,000, therefore, was not in the nature of a reduction of the purchase price, but rather of the deduction of a commission for a broker's services. But, however considered, its deduction would not alter appellees' right to a reasonable commission, and the evidence as a whole justified the jury's finding that $25,000 was a reasonable commission upon the net amount involved. We do not think that any of the evidence designed to show that because the deferred payments bore no interest, and that because the payments to be derived from production of oil might, through decrease in production, grow to be less than the sum actually stipulated, can properly be taken as a basis of facts to decrease the actual consideration to be received, and thereby defeat or reduce the commission which accrued, if at all, upon the conclusion of the trade itself. Under the evidence in this case adduced by appellees to establish their right of recovery, the commission was not dependent upon the amount which appellants might finally receive from deferred payments, but, rather, upon the amount which the parties to the sale estimated the lease to be worth. As to what an oil well will produce during a term of years is necessarily a matter or speculation, but when it was calculated and estimated, and the trade fixed upon the basis of such estimate finally made, then, whatever commission under the facts of this case appellees were entitled to must be put upon that same basis.

Certainly, in any event, that portion of Smith's excluded answer, which embodied an estimate of values and also speculation as to the value of the deferred part of the consideration being affected by the uncertainties of oil production, was not proper testimony. The same may be said of the excluded testimony appellants sought to adduce from Wade, which was only explanatory of the method of the payment of the consideration, except that part of it which related to the $50,000 broker's commission.

Appellants strenuously contend that, because the jury found appellees did not have a contract with appellants for a sale of the properties for the sum of $2,000,000, $1,000,-000 cash and $1,000,000 to be paid in notes within a period of 12 months, for a 2½ per cent. commission, the judgment for appellees was unauthorized.

[6] The findings of the jury expressed in the answers to their questions submitted by the court we think justify the judgment. Those findings are sustained by the evidence. There is no necessary conflict between them and this finding in response to the issue submitted at appellants' request. We do not think this answer is necessarily to be taken as a finding that a contract for the sale of the property at such price and on such terms never existed between the parties. The jury probably meant by the answer to indicate that, at the time the sale was concluded, appellees had agreed, as testified, to waive the terms of the contract they claimed to have had upon the basis of a sale for $2,000,000, and rely upon the claimed promise of a fair commission. It is a possible conclusion that the jury discredited that portion of appellees' testimony as to the terms of the contract they claimed, and yet believed, as was found, that a sale was made by appellees in pursuance of their employment as brokers, revealed in their recital of various acts and transactions. But, aside from speculation as to what prompted the finding, we think that, independent of it, support for the judgment exists in the other findings above set out. Those assignments and arguments not specifically noticed in this opinion have been carefully considered, and are overruled.

The pleadings and the evidence being sufficient to support the judgment, it will be affirmed.