## GOODMAN v. HENCK.   (No. 8984.)

Court of Civil Appeals of Texas. Galveston.
April 22, 1927.

1. Brokers ⟐⟐63(1)—Broker, who is procuring cause of sale but did not consummate it, is entitled to commissions.

Broker, who was procuring cause of sale of property and whose efforts to consummate sale were unsuccessful only because owner refused to permit him to sell at price which was offered to others, *held* entitled to commissions as matter of law.

2. Brokers ⟐⟐57(2)—Broker held entitled to commission for procuring purchaser, where owner sells directly for less amount than stipulated in broker's contract.

Real estate broker under contract providing for commission in event he sells property on terms stated is entitled to commission, if he procures purchaser to whom owner directly makes sale on terms satisfactory to himself, though for less amount than that stipulated in contract with broker.

3. Brokers ⟐⟐56(2)—Landowner took risk of liability for broker's commissions by selling without knowing whether purchaser had been procured by broker.

Where owner of property sold it without withdrawing broker's authority to sell and without knowing whether purchaser had been procured by broker's efforts, he took risk of liability for broker's commissions if unknown purchaser was so procured.

⟐⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from Galveston County Court; E. B. Holman, Judge.

Action by Arthur Henck against H. B. Goodman and others. Judgment for plaintiff against defendant named, and the latter appeals. Affirmed.

Roy Johnson, and Williams, Neethe & Williams, all of Galveston, for appellant.

Stewart, Damiani & Harris, of Galveston, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against H. B. Goodman, Burleigh Goodman, and A. J. Dow, to recover the sum of $500 claimed to be due appellee for services rendered by him as real estate broker in effecting the sale to defendant Dow of a lot in the city of Galveston owned by the defendants Goodman. Plaintiff's cause or causes of action were alleged alternatively against each defendant.

The trial resulted in an instructed verdict in favor of plaintiff against the defendant H. B. Goodman, and that plaintiff take nothing against the other defendant, and judgment in accordance with such verdict.

[1] The only question involved on this appeal is whether the evidence authorized the trial court to instruct a verdict for appellee against appellant. There is no conflict in the testimony upon any material issue.

The record discloses that appellant, who is a real estate broker of the city of Galveston, having heard that Mr. Burleigh Goodman desired to sell lots 6 and 7 in block 564 in the city of Galveston, went to Goodman and proposed to sell the lots for him. In response, Goodman told appellee to see if he could find a purchaser. Shortly thereafter appellee, having learned that Mr. A. J. Dow wanted to buy property in Galveston upon which to construct a garage, began efforts to induce Dow to purchase the Goodman property. Appellee testified as to his transactions and conversations with Goodman and Dow in reference to the purchase and sale of the property, as follows:

"I went to Mr. Goodman and told him I would like to sell the property, and he told me to see if I could find a purchaser. I then listed the property and started looking for a purchaser. I heard that Mr. A. J. Dow was in the market for lots on which to build a garage, so I went to Dow and told him about the property. He soon, as a result of my efforts, became interested in the property and I had an earnest receipt drawn up ready for him to sign when he stated he would like to know that I was authorized to sell this property, so I then went to Burleigh Goodman and told him Dow wanted some written authority. Mr. Burleigh Goodman then told me that his father was the owner of the property and to go to see him and his father would give me the authority. He said his father was in the Y. M. C. A. Building. I then went to the Y. M.

C. A. Building, and Mr. H. B. Goodman, the owner of the property in controversy, signed authorization to sell the property, a copy of which is attached hereto and marked 'Exhibit A.'

"Exhibit A reads as follows:

" 'February 4th, 1925.

. " 'I, Mr. Henry B. Goodman, of Galveston county, Texas, do hereby appoint Mr. Arthur Henck my lawful agent to sell my property, being lots 6 and 7 in block 564, city of Galveston, Texas, for the total price of ($12,000.00) twelve thousand dollars cash,. and I agree to pay my said agent a commission of five per cent. for the first $10,000.00 and 2½ per cent. on the balance for selling and to pay all taxes up to date of deed and to furnish abstract of title, and include all improvements on said lots.

" '[Signed] H. B. Goodman.'

"Mr. H. B. Goodman, when he signed the authorization, told me to take the matter up with Burleigh Goodman in regard to the property, as Burleigh was authorized to act for him, and whatever Burleigh did was all right with him. Then I went back to where Mr. Dow was and showed him the authorization that I had. The price I was authorized to accept was $12,-000. Mr. Dow did not sign the earnest receipt at this time, but still was interested in this property, but thought he could buy it for less than $12,000. I went to Burleigh Goodman and told him that Mr. Dow was the man I had interested, and also told Mr. H. B. Goodman that Mr. Dow was interested in the property.

"Before the written contract authorizing me to sell the property was made, I gave Burleigh Goodman Dow's name as a prospect, and Goodman said, 'All right, if Dow buys it, I'll protect your commission'—5. per cent. on the sale price.

"I asked Mr. Burleigh Goodman if the property could be bought for less than $12,000, but Burleigh Goodman said they would not sell it for less. I went back to Mr. Dow and told him he could not get it for less than $12,-000, and Mr. Dow then had me look into other properties with the view of purchasing same—Twenty-First and Church, Twenty-Fourth and Church, and the southwest corner of Twenty-First and Church—these three pieces of property I investigated for Dow.

"I kept the Goodman property listed on my books and continued trying to sell same, but could not sell same for $12,000. I was informed by W. N. Zinn that Goodman offered the property to him for $10,000. This was before the property was actually purchased by A. J. Dow.

"I saw Dow at least a half dozen times about the property of Mr. Goodman. Three weeks before the sale, which occurred on the 3d day of October, 1925, Dow asked me to find something a little better on Tremont street, and I told him not to let the Goodman property slip, and he said for me to try a little bit longer for him. About two weeks before the property was actually sold by H. B. Goodman, Burleigh Goodman met me on the street corner and asked me how I was getting along with Dow in regard to selling him the property. I told him at that time that Dow was under the impression that the property could be bought for less, and asked him if he would not sell for less than $12,000. At the time of this conversation, after Goodman had asked about Dow, I told him I would see Mr. Stofer; maybe he would give $12,000 for the property. After talking to Mr. Goodman, I immediately got in contact with Mr. Stofer, but he could not use the property at the price of $12,000.

"I asked W. N. Zinn about buying the property for $12,000, and he told me that Burleigh Goodman offered it to him for $10,000. I told Burleigh Goodman at the time of this conversation, about two weeks before H. B. Goodman sold the property to Dow, that I was still working on the land, and asked him to reduce the price. He said, 'No,' that it was worth $12,000, and he ought to get $15,000 for it. This conversation happened on the corner of Twenty-Fourth and Mechanic streets, Galveston, Tex. I told Mr. Goodman that Mr. Dow could not make up his mind to pay $12,000 for the property. Goodman at that time did not say anything about not selling the property, but asked me about the prospect Dow, whose name I had given him."

Mr. Dow testified:

"The first part of 1925, Mr. A. J. Henck, the plaintiff in this case, called on me and discussed the Goodman property with me. I told him that I was interested in the property and would buy the same if the price was right. He wanted me to make a deposit of $1,000 as earnest money, but before I would do this I asked Mr. Henck to show me some written authority from the owner of the property that I might be sure in dealing with him. Mr. Henck left and came back in a short while with a written document signed by Mr. H. B. Goodman, authorizing Mr. Henck to sell the property at a price of $12,000. Mr. Henck had already written out an earnest receipt for $1,000 as earnest money for the purchase of the property, which receipt showed a total price of $12,000, and wanted me to sign the earnest receipt and give him $1,000 earnest money. This I refused to do because I had heard that the property had been offered for $10,000, and I did not want to pay more for the property than the same had been offered to other people. Mr. Henck stated that he could not sell the property for less than $12,000. Mr. Henck and I discussed the Goodman property several times after this, and Mr. Henck also discussed other properties with me, but the prices of the other properties were too high and I would not consider same."

He also testified that he never discussed the matter with Mr. Burleigh Goodman at any time, for the reason that there had been a previous disagreement between them, and he was afraid Goodman would ask him an exorbitant price for the property.

Within two weeks after the conversation between appellee and Burleigh Goodman, in which Goodman was told that Dow thought the property could be bought for less than $12,000, and Goodman replied that he would not take less and ought to get $15,000 for it, Dow purchased the property for $10,000.

The manner in which this purchase was effected is thus stated by Mr. Dow:

"Some time later, Mr. Koehler, an employee of mine, asked me if I wanted to buy the Goodman property, and I told him, 'Yes,' if I could get it for $10,000 I would buy it. I had told Arthur Henck the same. I left town shortly after this conversation, and when I returned Mr. Koehler told me that I had bought the Goodman property for $10,000; that he had made arrangements with Mr. H. J. Hocker to buy the property for me, and that the deed to the property would be made to me. Mr. Hocker rents a small garage right next to the place I now occupy. I did buy the Goodman property for $10,000 cash. The purchase was handled in this way: Mr. Hocker signed and received an earnest receipt for Mr. H. B. Goodman for the property, and the earnest receipt stipulated in it that H. B. Goodman would sell the property to Hocker or order, and he (Hocker) transferred the same to me, and the deed to the property was made directly from Mr. H. B. Goodman to A. J. Dow."

Mr. Hocker, after stating that he operated a garage next door to Dow's place of business, and that in August, 1925, he asked Mr. Goodman to build a garage upon the property and lease it to him for five years, but that Goodman was not interested in this proposition, testified:

"Some time later, Mr. Koehler, who works for Mr. A. J. Dow, asked me to buy the Goodman property for Dow. I was to have the use of the grounds for storing automobiles and washing cars until Mr. Dow wanted the property, for acting for Mr. Dow in this transaction. I put up the earnest money ($500), which was afterwards repaid to me by Mr. Dow, and took the earnest receipt from Mr. H. B. Goodman for the purchase of the property for $10,000. The earnest receipt is attached hereto. Later on I made a written assignment of the earnest receipt and my rights thereunder to Mr. A. J. Dow, and I understood that Mr. H. B. Goodman made a deed of the property direct to Mr. A. J. Dow for $10,000."

We think this evidence conclusively shows that appellee was the procuring cause of the sale of the property to Dow. It was through his efforts that Dow, who was willing, ready, and able to buy, became interested in the property, and appellee's efforts to consummate a sale, which were continued up to the time the sale was made, were unsuccessful only because of the fact that appellant refused to permit him to sell to Dow at a price which appellant offered the property to others and finally sold to Dow.

[2] The authorities are uniform in support of the proposition that a real estate broker, under a contract providing for the payment of commissions to the broker in event he sells property upon terms stated in the contract, is entitled to his commissions if he procures a purchaser to whom the owner directly makes a sale upon terms satisfactory to himself, though for a less amount than that stipulated in the contract with the broker. The rule is thus applied by our Supreme Court in the case of Hoefling v. Hambleton, 84 Tex. 517, 19 S. W. 689:

"Having done all that they were reasonably required to do to effect the sale of defendant's land when a bona fide purchaser was procured for the land by such agent, at such price as the owner was willing to sell for, it cannot defeat the right of the agent to his commission for the owner to sell to such buyer for a less amount than he had authorized the agent to take."

In the case of Goodwin v. Gunter, 109 Tex. 56, 185 S. W. 295, in discussing this question, our Supreme Court, speaking through Chief Justice Phillips, says:

"But the commissions are earned and the broker is entitled to their payment according to the contract if, while it is in force, he procures a purchaser to whom the owner directly makes a sale upon terms which are satisfactory to himself, though different from those limited to the broker and yielding the owner a less amount than that for which the broker was empowered to sell. This is but a rule of fairness and right. In such a case the owner receives the full benefit of the broker's effort. Through the diligence of the broker a buyer is produced. Having interested a prospective buyer the broker is entitled to a fair opportunity of making a sale to him upon the terms authorized. That the owner, pending the broker's negotiation, may, in disregard or repudiation of his obligation to respect the broker's right to conclude the transaction, take the matter into his own hands, avail himself of the broker's effort, close a sale upon satisfactory terms, and yet deny the broker's right of compensation, is a proposition not to be countenanced."

[3] The evidence, while not conclusive that Goodman knew, when he contracted with Mr. Hocker to sell the property to him or any person designated by him, that Hocker was acting for Dow, is sufficient to sustain such a finding. We do not regard this fact as material.

In the case of McDonald v. Cabiness (Tex. Civ. App.) 98 S. W. 943, which was approved by our Supreme Court in 100 Tex. 615, 102 S. W. 721, it was held that it is not material to the broker's right to recover commissions that the owner should know when he sells directly to a purchaser that such purchaser had been procured through the efforts of the broker.

Goodman had not withdrawn appellee's authority to sell the property, and was told by appellee a short time before the sale was made by Goodman that he was continuing his efforts to sell the property. In these circumstances, when Goodman sold the property without knowing whether the purchaser had been procured by appellee's efforts, he took the risk of liability for appellee's commissions if his unknown purchaser had been so procured. This conclusion is sustained by the

cases of Graves v. Bains, 78 Tex. 92, 14 S. W. 256, and Hill v. Huber (Tex. Civ. App.) 202 S. W. 785.

We are of opinion that the judgment should be affirmed.