## FIRST NAT. BANK IN DALLAS v. SMITH.
### No. 12879.

Court of Civil Appeals of Texas. Dallas.

May 11, 1940.

Rehearing Denied June 15, 1940.

## CULLUM et al. v. CULLUM.
### No. 5174.

Court of Civil Appeals of Texas. Amarillo.

June 10, 1940.

Coke & Coke and Thomas G. Murnane, all of Dallas, for appellant.

Kent D. Allen, J. W. Hassell, and J. W. Hassell, Jr., all of Dallas, for appellee.

YOUNG, Justice.

This suit was for commission alleged to be due and owing, following the completion of a real estate transaction. Appellant bank has appealed from a judgment rendered against it, of $2,125, upon jury answers, (1) That Oliver Smith was the procuring cause of the sale and exchange between defendant First National Bank in Dallas and R. Lacy, evidenced by a contract of date February 1, 1938; (2) that prior to said date (February 1, 1938), Smith did not abandon his efforts to induce R. Lacy to purchase the land in question from said bank, and (3), that R. (or Roger) Lacy would have been induced to purchase said land (the Gray Ranch) on terms of the sales contract without the intervention and services of W. H. Kindred.

Plaintiff's trial pleading alleged, in brief, the express agreement of appellant to pay him a commission equal to five per cent on the sales price of the bank's realty, and two and one-half per cent on the agreed price of any property taken in exchange, conditioned that a purchaser be procured, ready, willing and able to pay a consideration satisfactory to the bank; also asserting an implied agreement by the bank to pay him the usual and customary commission in like transactions, which he averred to be, "five per cent of the purchase price for said property, and a commission equal to two and one-half per cent on the agreed price of any property taken in exchange * * *". The bank's pleading on the trial consisted of general and special exceptions and general denial. Defendant's objections to the court's charge were to the definition of "procuring cause", not briefed; and that issue (1) above, was not supported by, and was contrary to, plaintiff's pleadings, also contrary to the undisputed evidence. Defendant's motion for a new trial later complained of the judgment ($2,125) being supported by no evidence of actual property values; on the other hand, that the rendition was based upon fictitious or trade values used by the buyer and seller in completing their deal.

Though not taken in their order of presentation, appellant's grounds of error are, substantially, these: (1) The record is challenged as insufficient to raise any jury question whatsoever, because the same indisputably shows that plaintiff and W. H. Kindred were rival brokers; that Smith failed within a reasonable time to produce a purchaser on terms satisfactory to the bank and also ready, willing, and able to buy Lacy's land; that Lacy (the purchaser), becoming dissatisfied with Smith's efforts, terminated any species of employment claimed by Smith, and engaged Kindred, who became the sole and independent cause of the later sale and exchange; that the bank was entirely justified in paying the second broker full commission, with

no consequent obligation or liability to Oliver Smith; (2) that plaintiff, though pleading an express oral contract of employment with the bank, to make a sale of its 1,100 acres, the evidence attempted to establish only an implied contract, or knowledge by the bank of plaintiff's negotiations with Lacy, and acceptance of his services; (3) that plaintiff's suit being for commission growing out of an exchange of land, he was required to allege and prove the actual values of the property involved in such exchange; and was not entitled to compute and recover a commission based upon fictitious values used in the deeds. Hence, plaintiff's judgment, absent proof of actual values, was without support in the evidence. (4) The court erred in excluding testimony that appellant bank, in good faith, paid W. H. Kindred a commission of $2,000 for closing the transaction between the seller and purchaser; (5) there was a defect in parties, in that, Kent D. Allen was a necessary party plaintiff, the uncontroverted evidence showing Allen to be the principal for whom plaintiff was working in the particular deal, or was a partner in a joint enterprise with Oliver Smith, regarding the prospective purchaser Lacy.

The fact questions embodied in the several jury answers were raised by the evidence, as a brief résumé thereof will disclose. Plaintiff testified that he had long been familiar with the bank's property, having attempted to sell it for previous owners; that in May, 1937, he called on Nathan Adams, appellant's president, and secured verbal authority to list it at around $47,000; that Kent Allen introduced him to Roger Lacy, of Longview, who desired to sell his South Dallas realty; at the same time, to purchase country acreage adjacent to Dallas; and that after taking Lacy over the bank's land, the following offer was secured: "August 19, 1937. Mr. Oliver Smith, Dallas, Texas. Dear Sir: I hereby offer you $25,000.00 in cash and my property at Colonial and Metropolitan Streets, Dallas, Texas, clear of debt for the 1100 acres of land situated about six miles from Dallas and known as the Judge Gray place on the Scyene Road and running through to the Kaufman Road, said 1100 acres to be delivered clear of debt and taxes and rents to be prorated on each piece of property. Very truly yours, (Signed) R. Lacy."

Mr. Adams immediately had the Lacy property investigated as to values, but rejected the above offer, stating to Smith:

"If you will get him up to around $40,000 and those stores, I think I will trade, I will recommend it." Smith further testified, in effect, that he continued his contact with Lacy, seeing the latter several times in efforts to get another offer satisfactory to the bank; talking with Mr. Adams about the bank's land as late as January 23, 1938, during an overflow, and was told that such was not a good time to sell. A contract of sale was obtained by W. H. Kindred February 1, 1938, whereby Lacy became the purchaser of the Gray Ranch for $50,000, one-half cash and the balance in notes. Of this cash payment, $15,000 was evidenced by Lacy's South Dallas stores. The bank's deed recited $50,000 consideration, of which $25,000 was "cash in hand paid". Nathan Adams testified that he talked with Smith at least half a dozen times about the land, not recalling any particular endeavor of plaintiff toward securing a purchaser, except in the Lacy letter of August 19, which was rejected; the terms presented by W. H. Kindred months afterward were better by $10,000, and were satisfactory; and that, when he sold to Lacy with Kindred as broker, he had entirely overlooked the fact that such purchaser had already been Smith's prospect; he simply remembered that the two offers were entirely different. The bank's verbal agreement with Smith, through its president, Adams, was that, if such agent procured a sale, the usual commission would be paid—five per cent on the sale of the properties, and two and one-half per cent on exchanges. Oliver Smith said the agreement for compensation was the regular commission of five per cent on the straight sale and two and one-half per cent on the trade. Roger Lacy, the buyer, testified that his attorney, Kent Allen, and Oliver Smith were the first and last persons who ever showed the bank's land to him; that when his written offer of August 19 was turned down, Smith advised him of the fact, and that the bank had inspected the South Dallas stores, and wanted $40,000 difference; that he (Lacy) then declined to raise his offer, asking Smith to advise him in case said bank made another proposition; talking with Smith about once a month until the sale was finally made through Kindred. Lacy's further testimony was that he sought out Kindred along in December, 1937, as one who could put over with the bank the same trade previously offered through plaintiff Smith; that he informed Kindred the land had already been shown by Smith; Lacy

then being told by Kindred that he could possibly get the original offer of $25,000 and property accepted by the bank, whereas, Smith, for stated reasons, could not; and that a proposition was then made that resulted in the sale. Further, that so far as he (Lacy) knew, Smith had no knowledge of Kindred's successful negotiations until afterward, and thought it proper to ignore Smith because of Kindred's favorable acquaintance with certain officers of the bank.

The above thumb-nail sketch of the evidence sufficiently demonstrates same to be susceptible of different constructions as to who procured the sale of the respective properties,—whether plaintiff, alone, could have consummated the deal, or had abandoned his efforts to procure Lacy as a satisfactory purchaser. The trial court then did not err in overruling defendant's request for peremptory instruction, and its later motion non obstante veredicto. Under the jury verdict, the principle to be applied is stated in Stone v. Cox, Tex.Civ. App., 244 S.W. 620, 622, the facts being quite similar. The court there held: "In the present case the final negotiations and sale were not conducted by the owner but by another broker, but the right to the commission of the first broker, who procured the purchaser and whom the evidence discloses was the primary and procuring cause of the sale, is not affected and cannot be defeated by the fact that the final negotiations were conducted and the transaction finally consummated through another broker, and this is true, even though the terms of the first negotiations may have been varied." See, also, Masters v. Hunt, Tex.Civ.App., 197 S.W. 219.

Relative to appellant's second proposition, plaintiff clearly plead an express agreement, and we think his proof corresponded thereto, though an implied contract to pay a commission was also plead.

Proposition 3 has been given careful study. The Bank here asserts plaintiff's suit to be for commission growing out of an exchange of lands, that no pleading or proof of actual values are in the record, hence, the computation of $2,125 (the judgment rendered on the jury answers) is entirely without support. The well settled rule is sought to be applied by appellant that, where a broker effects an exchange of property for his principal, in the absence of any contract providing for specific compensation, the measure of recovery must be computed on the actual value of the property received by the principal in exchange, and not upon its market, trade, or fictitious value. Story v. Conn, Tex.Civ.App., 27 S.W.2d 909. The rule just stated is a dominant factor in a suit based upon an implied contract to pay a commission, the salient feature of which is an exchange of land rather than a sale; also, the acts of the principal may obviate proof of actual values, where, as here, the property received from the purchaser has been given a money valuation, and is recited to be a part of the cash consideration for the sale. Clearly, from the terms of the deed to Lacy, the transaction in question was a "straight sale" of the bank's acreage, to which Smith would have been entitled to full percentage under the jury findings, absent the further understanding that only two and one-half per cent commission should be computed on that part of the cash consideration evidenced by the Lacy property. The $35,000 received by the bank was money by every known criterion, rendering any other valuation immaterial. So, also, the bank, by the deed recital of cash in hand paid, $15,-000 thereof being the Lacy realty, agreed to and affixed a valuation thereon, obviating the necessity of other proof, as in case of exchange. Therefore, following a sale by the bank of its land for cash or its equivalent, there were present in the purchase contract, recitals binding on it, from which plaintiff's commission of five per cent and two and one-half per cent were properly computed.

Even if the transaction, to the extent of the Lacy realty, should be treated as an exchange of lands, we believe the sales agreement just mentioned, followed by the bank's deed, established valuations of the respective tracts, the resulting liability being a mere calculation of percentages. Hull v. Eidt-Summerfield Co., Tex.Civ. App., 204 S.W. 480.

The trial court did not err in excluding testimony of W. H. Kindred that he had been paid $2,000 by the bank, as broker in the deal. Appellant admits, of course, that such can be no defense to the meritorious demands of another broker, but argues the inadmissibility of the testimony because the cross-examination of Kindred by appellee insinuated that his services were resorted to by the bank as a subterfuge to defeat Smith's claim. Under defendant's general denial, the proffered evidence raised no issue material to plain-

tiff's cause of action, and objection thereto was properly sustained. Stephenson v. Jackson, Tex.Civ.App., 128 S.W. 1196; Studt v. Leiweke, Mo.App., 100 S.W.2d 30. Also, there was no defect of parties plaintiff. Kent Allen was not plaintiff's partner in real estate matters; on the other hand, he had long been an attorney, and was counsel in the instant case. He had no understanding with the bank in the listing of its acreage, his interest being limited, at best, to a part of Smith's recovery, under separate agreement between these two alone. Haley v. Pearson, Tex.Civ.App., 14 S.W.2d 313, strongly relied on by appellant, concerned a suit between agents upon a promise to share commissions, and the landowner was not involved, as here. See Laird v. Barnett, Tex.Civ.App., 255 S.W. 770, for facts more closely in point, where there was held to be no defect in parties; and in Hodde v. Malone Real Estate Co., Tex.Civ.App., 196 S.W. 347, 350, under a situation quite analogous, the same contention was made. The court there said: "The thirteenth assignment complains of the action of the court in authorizing a verdict for appellee, while by the evidence it appears that J. K. Profit was entitled to a portion of any sum recovered. It is shown by evidence which we have not stated heretofore that J. K. Profit, while not a member of appellee firm, was commonly associated with them in sales and was entitled to an even division of the commission sued for, if collected. This, in our opinion, made Profit neither a necessary nor a proper party. He was not entitled to recover against appellants on the contract appellee alleged, nor could he have recovered from appellee upon the contract with appellants. His remedy was against appellee upon an independent contract with it."

Although appellant, in manifest good faith, has already paid a commission, yet, the jury found another broker to be the procuring cause of the sale above discussed, and the seller's liability to the successful broker is not thereby discharged. The bank knew that both Smith and Kindred had dealt with the same prospect concerning the same lands, and it could have safely avoided a double payment by methods easily available. "Where an owner lists his land with several agents, he takes the risk of having to decide at his peril to whom he shall pay the commission. Ramsey v. Gibson (Tex.Civ.App.) 185 S.W. 1025; Stephenson v. Jackson (Tex.Civ.App.) 128 S.W. 1196; Masters v. Hunt (Tex.Civ.App.) 197 S.W. 219; Goodman v. Henck (Tex.Civ.App.) 295 S.W. 349." Crosby County Cattle Co. v. Davis, Tex.Civ.App., 28 S.W.2d 1098, 1100.

It follows that appellant's assignments and propositions must be overruled and the judgment of the district court affirmed.

Affirmed.